**In re COMPTON CORPORATION, Debtor.**

**In re GRATEX CORPORATION, Debtor.**

**COMPTON CORPORATION, By and Through Walter KELLOGG, Trustee, and Gratex Corporation, By and Through Charles Dick Harris, Trustee, Plaintiffs,**

v.

**The UNITED STATES of America, DEPARTMENT OF ENERGY, Defendant.**

Bankruptcy Nos. 782–00055, 782–00054. Adv. No. 784–7024.

United States Bankruptcy Court, N.D. Texas, Wichita Falls Division.

June 27, 1984.

David R. Snodgrass, Philip J. Nicholson, Dallas, Tex., for Compton/Gratex.

Arthur S. Weissbrodt, Thomas A. Schweitzer, U.S. Dept. of Energy, Washington, D.C., for DOE.

MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On April 4, 1984, this Court conducted an evidentiary hearing on the motion of Walter Kellogg, Trustee in Bankruptcy of Compton Corporation, seeking to subordinate the claim of the United States, Department of Energy ("DOE") on the ground that it is a claim for a penalty under Section 726(a)(4) of the Bankruptcy Code. In the alternative, the Trustee sought to subordinate the DOE claim under Section 510(c) of the Bankruptcy Code.

Two issues are before the Court. The first issue is whether Section 726(a)(4) of the Bankruptcy Code applies to the case at bar. The second issue is whether the DOE claim is a penalty or is for restitution. This Court rules that Section 726(a)(4) does apply and that the DOE claim is a penalty. Therefore, the DOE claim must be subordinated to all other creditors' claims.

FACTUAL BACKGROUND

An involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the Debtor, Compton Corporation, in May 1982. The Debtor promptly converted to Chapter 11 and attempted to continue its business of crude oil purchasing and saltwater hauling. These efforts were not successful. In August, 1982, an interim trustee under Chapter 11 was appointed, and liquidation of the assets of Compton Corporation commenced.

Compton Corporation's assets had consisted, principally, of tractor trucks and trailers used to pick up crude oil and saltwater, and numerous pipeline injection facilities and storage facilities. Pursuant to blanket approval orders entered in these proceedings, almost all of these assets have been sold. Likewise, all crude oil on hand at the time this case was filed has been liquidated. As a result the Estate of the Debtor, Compton Corporation, is now com-

prised of substantial cash deposits and an immaterial amount of hard assets yet to be liquidated.

For the most part the creditors having claims against the Estate are unpaid royalty and working interest owners of producing oil wells from which Debtor removed crude oil in the months immediately preceding the involuntary petition. There are several thousand of these claimants. Other claims are for taxes, utilities and trade materials and services.

On January 7, 1983, the DOE filed proofs of claims in these proceedings asserting liability to the DOE of $6,065,681.93 for alleged overcharges. These alleged overcharges were apparently in violation of Federal pricing statutes and regulations pertaining to Compton Corporation's sales of crude oil prior to January 1981. Since the hearing on this case on April 4, 1984, the DOE has initiated its own claim determination proceeding before the Office of Hearings and Appeals. DOE issued a Proposed Remedial Order ("PRO") on April 26, 1984, which requires "Compton Gratex" to deliver to DOE a certified check in the amount of $8,851,300.93 plus interest within twenty days for the alleged overcharges. Notice of this PRO was published in the Federal Register on May 16, 1984. To date, the DOE has not identified those persons who are allegedly due these overcharges by the Debtor, but insists that they are due and that the Debtor is subject to daily fines and penalties as well as more severe sanctions for non-payment.

Without including the claim asserted by DOE, it is probable that those creditors having claims for royalties, working interests, taxes, utilities, trade materials, services and the like will receive an ultimate dividend approximating fifty percent. If the DOE's claim is included in full, the dividend to the claimants will be approximately twenty-five percent or less.

None of the parties involved in this case has filed a plan of reorganization to date. Any such plan will constitute a liquidating reorganization since almost all of the assets have already been liquidated.

## . CONCLUSIONS OF LAW

Section 726 of the Bankruptcy Code is the general distribution section for liquidation cases. This section dictates the order in which distribution of property of the estate by priorities where it has been reduced to money by the trustee. Distribution to general unsecured creditors follows payment to priority creditors. Section 726(a)(4) provides that penalty claims shall be subordinated in payment to all other claims except equity claims. The Debtor, Compton Corporation, asserts that Section 726(a)(4) is applicable to this case. The DOE argues that this section is not applicable here because it falls under Subchapter II of Chapter 7 of Title 11, United States Code Annotated. In furtherance of its argument, the DOE contends that Section 103(b) of the Bankruptcy Code provides that it is applicable only to Chapter 7 cases.

The DOE refers the Court to some of the legislative history pertaining to Section 726(a)(4) and the cases of *In re Community Hospital of Rockland County*, 5 B.R. 7 (Bankr.S.D.N.Y.1979), *aff'd*, 5 B.R. 11 (D.C. S.D.N.Y.1980) and *In re Roamer Linen Supply, Inc.*, 30 B.R. 932 (Bankr.S.D.N.Y. 1983), in support of its argument. This Court does not contest the rulings in these cases. However, it is this Court's opinion that these cases are distinguishable from the case at hand. The *Community Hospital* and *Roamer Linen* cases hold that Section 724(b) of the Bankruptcy Code is inapplicable to reorganization cases under Chapter 11 concerning the subordination of federal tax liens to administrative expenses and wage claims. The Debtor's, Compton Corporation, case is distinguishable from the *Community Hospital* and *Roamer Linen* cases in that a wholly different provision of the Bankruptcy Code, Section 726(a)(4), is at issue. The cases cited by the DOE concern Section 724 which speaks to the avoidance or non-avoidance of tax liens. Section 726 sets out the sequence for the distribution of property of the estate. In particular, Section 726(a)(4) provides for the allowance of "secured and unsecured claims for any fine, penalty, or forfeiture, or for multiple, exemplary, or

punitive damages ... to the extent that the fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss". 11 U.S.C.A. § 726(a)(4). This case also differs in that virtually all of the assets of the Debtor, Compton Corporation, have been liquidated. It is this Court's view that no assets will remain for any sort of reorganization by the Debtor. Although this case was filed under the reorganization provisions of the Bankruptcy Code, it is similar to a liquidation case.

Moreover, the DOE ignores "the best interest of the creditors test" incorporated by Section 1129(a)(7) which requires that, unless they otherwise consent, claimants shall receive no less under a Chapter 11 plan of reorganization than they would receive in a Chapter 7 liquidation case. In the interest of justice, fairness, and equity, the Court is required by this section of the Code to review what the creditors will receive in the liquidation of the estate with or without the subordination of the DOE's claim. The claim for alleged overcharges, if allowed and not subordinated, would cause the creditors of the estate to receive considerably less than they are entitled to from the Debtor. These are creditors who dealt with the Debtor directly on a personal level, who invested time, money, materials and services, and who have experienced a loss. The DOE's claim is for money allegedly due to unknown persons who may have suffered overcharges on their purchases of crude oil from the Debtor. The non-subordination of the DOE claim is not in the best interest of the creditors. It is this Court's opinion that Section 726(a)(4) is applicable to this case.

The second issue before this Court is whether DOE's claim is a penalty or is it restitution. DOE seeks to have the Debtor disgorge over $8,000,000 of alleged illegal overcharges made with respect to the sale of crude oil prior to Debtor's bankruptcy proceeding. It is the view of this Court that the DOE's claim for disgorgement is a penalty and not restitution.

The former Bankruptcy Act provided that a penalty claim would be disallowed in a bankruptcy proceeding, except to the extent that the penalty claimant had suffered some pecuniary loss. Under the Bankruptcy Reform Act of 1978, such claims are no longer disallowed but are merely subordinated to the claims of those who have suffered actual pecuniary loss. Bankruptcy case law under the former Bankruptcy Act delimiting the concept of "penalty" is still the law. Controlling precedent defines a Bankruptcy penalty as a claim without actual pecuniary loss to the claimant.

The Fifth Circuit defined a bankruptcy penalty in *U.S. v. Moore*, 366 F.2d 243 (5th Cir.1966), wherein the Government asserted a claim against the debtor for violation of cotton marketing quotas. The Government argued that this assessment was not a penalty but was instead a civil debt, designed to discourage overproduction of cotton. Further, the Government emphasized that the IRS had determined that the cotton marketing quota assessment was, for the farmer, payment of an ordinary and necessary farming expense rather than payment of a penalty for income tax purposes. The Fifth Circuit rejected all definitions of penalty for other purposes and held that for purposes of bankruptcy, all claims against a debtor are barred except those based on actual pecuniary loss to the claimant.

In *In Re: Thrift Packing Company*, 100 F.Supp. 907 (D.C.N.D.Tex.1951) the Government asserted a claim against a debtor based on failure to pay overtime compensation and for knowing employment of child labor in violation of the statute; the Government denominated its claim "damages", asserting, as the DOE now claims, that the amount assessed was not a penalty but was for the benefit of those laborers who had actually suffered a pecuniary loss. The District Court for the Northern District of Texas upheld the referee's disallowance of the claim and found that the assessment was a penalty:

> If we think very carefully, we will note that the bankrupt owed the United States nothing. It was not indebted to the United States. The United States merely had the exclusive right to bring a suit against it for an alleged violation of

a United States law, the recovery under which, if had, would be for the benefit of the employees, provided they appeared within a certain time.

Penalty is punishment inflicted by law for its violation. A punishment imposed by law for doing, or failing to do, something that it was the duty of the party to do, for the nonperformance of an act, or, the performance of an unlawful act.... The interested party here is the sovereignty, which legislatively declares certain working hours, as well as certain ages for such workers and declares it right to recover in its own name what are denominated liquidated damages, when, as a matter of fact, the sovereignty has not been damaged. It is the employee who has been damaged. Yet the employee may not sue (cites omitted).

I am convinced that the referee was correct in refusing the proof of claim, *Id.* at 908.

Similarly, the United States Supreme Court approved this exclusionary method of definition of a bankruptcy penalty in *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962):

"... [the language of 57(j) ] plainly manifests a Congressional purpose to bar *all claims* of any kind against a bankrupt *except* those based on a pecuniary loss."

The claim of the DOE differs from all the other claims filed in this case in that the DOE has suffered no actual pecuniary loss. Bankruptcy law has never granted such a penalty parity with the claims of those who have been directly injured by the Debtor's insolvency. The provisions of Section 726(a)(4) specifically subordinate such claims as are "not compensation for actual pecuniary loss suffered by the holder of such claim." If indeed there were losses from overcharges here, they were suffered by unknown participants in the chain of production of the petroleum industry. If the Debtor made overcharges, they were not paid by the DOE. If the DOE has a claim against the Debtor, it is unrelated to any pecuniary loss to the government and is a penalty.

I find unconvincing the DOE's argument that its claim is for restitution. "Restitution" means restoring to an injured party the property which has been taken from him by another, or the value of that which was taken. However, the Debtor has not taken or received property from the DOE. This Court cannot "restore" DOE to a position which it never enjoyed. In actuality, overcharge payments to the DOE constitute pure and simple disgorgement and bear no semblance to restitution.

The DOE argues that upon receiving disgorgement of overcharges, the DOE attempts to locate parties who actually paid the overcharges so that restitution might occur. The Court rejects the notion that actual restitution might occur on two grounds. First, the Court notes from numerous DOE cases and consent orders cited by the Trustee, that vast sums disgorged by wrongdoers have been placed directly or indirectly in the Treasury of the United States without any attempt to identify actual injured persons. Second, those remaining disgorged sums which are credited to the DOE's escrow accounts, ostensibly for the benefit of unnamed injured parties, virtually never reach actual injured parties. This is demonstrated in most dramatic fashion by review of the DOE's own summary report of its escrow accounts as of October 31, 1983 which is part of this record. That report shows that 765 separate wrongdoers have made disgorgement payments to the DOE escrow accounts totalling almost $725,000,000. Yet, actual injured parties have received less than 3% of that amount. The Court further notes an entry in that report which reflects the payment by the DOE from those escrow funds in February 1983 of $200,000,000 directly to various state governments, apparently to "effectuate restitution by a means reasonably designed to benefit the class of persons who were injured by the violations, but whose members cannot be reasonably identified ..." See 48 Fed.Reg. 5293 (February 4, 1983). In the face of this data it is foolish to suggest that any meaningful restitution to actual injured parties occurs by virtue of disgorgement payments to the

DOE. Certainly, what limited restitution may occur does not justify the massive dilution to creditors' dividends which would result in this case if the DOE claim were allowed on a parity with other claims.

The Court is further persuaded that the DOE's claim is in the nature of a bankruptcy penalty by reason of several judicial and administrative pronouncements that disgorgements of overcharges to the DOE are responsive to public rights that do not affect or impact the rights of actual injured parties to recover the same overcharges directly from the wrongdoers under private rights of action. *Conoco,* 47 Fed.Reg. 49700; *Standard Oil Co. (Indiana),* 45 Fed.Reg. 26747 ("The Consent Order settles and resolves only claims and disputes between Standard and DOE. It was not .intended to resolve all private claims against Standard, nor was it intended to extinguish any private rights of action." at p. 26748); *Sun Company, Inc.,* 45 Fed. Reg. 80347; *Tenneco Oil Co.,* 46 Fed.Reg. 29499; *Coastal Corp.,* 46 Fed.Reg. 28499; *Bulzan v. Atlantic Richfield Co.,* 620 F.2d 278 (TECA 1980).

*Bowles v. Farmers National Bank,* 147 F.2d 425 (6th Cir.1945) was a case involving similar overcharge regulations and statutes urged by a predecessor agency of the DOE. At issue was whether the asserted overcharge liabilities to the agency were in the nature of penalties which would not survive the wrongdoer's death. It was held that the liabilities were penalties because "public" rights were being asserted by the agency, as opposed to private rights of the parties who were actually overcharged. The Court's language is instructive:

"(t)he basic test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or to the individual."

\*   \*   \*   \*   ʰ   \*

While private rights and interests are necessarily affected, the controlling purpose of the (statutes) is to protect the public ..."

\*   ⁴   \*   \*   ʳ   \*

"... if a sum of money is to be recovered by a third person for violation of a stat-

ute instead of the person injured ... it constitutes a penalty rather than damages." p. 428

In a similar and highly analogous case, *Porter v. Montgomery,* 163 F.2d 211 (3rd Cir.1947), the Third Circuit also denied the Government's attempt under pricing regulations to recover statutory damages for alleged overcharges paid by private purchasers, saying:

A civil action is for damages if it is brought for the compensation of the injured individual. It is for a penalty if it seeks to obtain a sum of money for the state, an entity which has not suffered direct injury by reason of any prohibited action .... In a penal statute the penalty is inflicted by a law for its violation. In the case at bar the sum sought to be recovered by the Administrator clearly is not intended for compensation whereby (the overcharger) should reimburse or compensate any person whom he injured by sales above ceiling price. The sum sought to be recovered is in the nature of an exaction to be levied upon (the overcharger) as a penalty to aid in the prevention of a repetition of an offense prohibited by the Act.

Another clearly applicable case is *In Re James Butler Grocery Co.,* 22 F.Supp. 993 (E.D.N.Y.1938) where the New York Department of Agriculture filed a proof of claim in a bankruptcy proceeding for the amount of unlawful discounts or rebates taken by, and agreed to be paid by, the bankrupt in connection with milk purchases. In disallowing the claim as a penalty the Court concluded:

.... it is sufficient to say that the payments to be made by the bankrupt herein were penalties within the meaning of Section 57j of the Bankruptcy Act.... *The state had sustained no pecuniary loss* by virtue of the bankrupt's acts, except such as one might remotely conjecture. *In effect what happened was the relinquishment by the bankrupt of that which it had obtained by its wrong and the acceptance of the same by the state in atonement therefor .... The*

*absence of pecuniary loss for which the state should be reimbursed brings the case clearly within Section 57j of the Bankruptcy Act. Id.* at page 994–995. (Emphasis added.)

Since the DOE has publicly admitted time and time again that its claims are between the DOE and the wrongdoer and affect no rights of actual injured parties against the wrongdoer, and since several Courts have affirmed the correctness of the DOE's position in this regard, the import of *Bowles, Porter* and *Butler* is inescapable: The DOE's claim constitutes assertion of a public right without actual pecuniary loss, and, therefore, is a penalty.

There are $10,000,000 of real, living, suffering claimants in this case who will be lucky to get a fifty cent return on their losses. Each of these claimants has suffered identifiable and certain pecuniary loss and each is deserving of his fair share of the remnants of this Estate without further dilution. To permit the DOE to take half of what is left would be to make these already suffering creditors suffer even more for the crimes of an alleged wrongdoer. The alleged wrongdoer is defunct; Compton is dead. Its principals are long gone. By asserting its claim in this case, the DOE can only hurt the creditors. It cannot distribute whatever it may receive to injured parties; it can only take from the share properly distributable to known claimants and redistribute to the public coffers. It is just such a result that the penalty prohibitions in the Bankruptcy Code seek to avoid.

It is, therefore, ORDERED by the Court that the claim of DOE in any amount allowed be, and it is hereby, subordinated in payment to all allowed priority and unsecured claims.

The Court finds it unnecessary at this time to rule upon the Trustee's motion to subordinate under Section 510.

The Court finds that the amount of the DOE claim is $8,851,300.93 and preserves the right of the Trustee to object to the amount thereof.

This Memorandum and Order shall constitute the Court's Findings of Fact and Conclusions of Law.