In the Matter of the MANSFIELD TIRE & RUBBER COMPANY, Pennsylvania Tire and Rubber Company of Mississippi, Inc., Pennsylvania Tire Company, Debtors.

Bankruptcy No. 679–01238.

United States Bankruptcy Court, N.D. Ohio.

Sept. 4, 1987.

H. Jeffrey Schwartzberg, of Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, and David Simiele, of Krugliak, Wilkins, Griffiths & Dougherty, Canton, Ohio, for the movants the Co–Disposition Assets Trustees.

Joanne C. Rutkowski, Washington, D.C., for the respondents the U.S., I.R.S.

### AMENDED MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT

JAMES H. WILLIAMS, Bankruptcy Judge.

Presently pending before the court is a Motion for Summary Judgment filed on behalf of the confirmed Chapter 11 Co–Distribution Assets Trustees (Trustees) in support of their objection to certain claims of the United States of America, Internal Revenue Service (Government or IRS). The Trustees dispute the priority status of the Government's claims for pre-petition "excise taxes" imposed pursuant to 26 U.S.C. § 4971.

The relevant facts are not in controversy. The Mansfield Tire & Rubber Company and a related company, The Pennsylvania Tire and Rubber Company of Mississippi, Inc., filed voluntary petitions for relief under Chapter 11 of Title 11 of the United Code on October 1, 1979. Shortly thereafter, on November 1, 1979, another related company, The Pennsylvania Tire Company, Inc.,

sought protection under bankruptcy law. On February 6, 1980, the United States filed a proof of claim for pre-petition withholding and Federal Insurance Contribution Act (FICA) taxes. During the pendency of the bankruptcy cases, the IRS "supplemented" its claim several times to add a total of $363,111.20 in Section 4971 excise liabilities for the years 1977–79 as unsecured priority claims.[1]

On December 30, 1985, a consolidated liquidating Chapter 11 plan of reorganization was confirmed by the court. Under the terms of the plan an Assets Disposition Trust was established in which all assets of the estates were vested. The Co–Disposition Assets Trustees, Richard L. Phillips and Samuel Krugliak, filed an objection to the Government's proof of claim on November 18, 1986. Several months thereafter, the Trustees filed the instant Motion for Summary Judgment. The IRS responded and filed a Memorandum in Opposition to the Trustees' motion. The Trustees then requested and were granted leave to file a reply brief.

### ISSUES

1. Do assessments imposed by the United States Government pursuant to 26 U.S.C. § 4971 constitute "taxes" within the meaning of Section 507(a)(6)[2] of the Bankruptcy Code?

2. Should the IRS' claim for "excise taxes" pursuant to 26 U.S.C. § 4971 be subordinated to claims of other creditors pursuant to Section 726(a)(4) or Section 510(c) of the Bankruptcy Code?

### DISCUSSION

#### A.

Since the Act of 1800, debts due the United States have been granted priority status in bankruptcy cases. *See generally,* Collier on Bankruptcy para. 507.01 (15th ed. 1987). Section 507(a) of the Bankruptcy Code outlines those obligations entitled to priority in distribution and the order of priority in a bankruptcy estate and provides in relevant part:

The following expenses and claims have priority in order:

.     .     .     .     .

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

.     .     .     .     .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

.     .     .     .     .

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

"All Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special field taxes, and wagering and truck taxes." 124 Cong.Rec. 11,112 (1978), 3 Collier on Bankruptcy, *supra,* para. 507.-04[7][f].

---

1. The Government's original proof of claim filed on February 6, 1980 asserted only liabilities for withholding and FICA taxes. The IRS' first supplement to its proof of claim was submitted on May 19, 1980 and added $315,208.00 in excise obligations. The second supplement sought only additional FICA and withholding taxes. The November 26, 1983 third supplement to the proof of claim requested allowance of additional Section 4971 liabilities in the amount of $16,-061.20, while the fourth supplement demanded $31,842.00 in further excise obligations and was filed on June 4, 1981.

2. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 358 (1984) redesignated Section 507(a)(6) as Section 507(a)(7). However, this amendment applied only to cases filed 90 days after July 10, 1984 and, accordingly, the court will refer to Section 507(a)(6) as it existed prior to the 1984 Amendments.

The Trustees argue that the assessments before the court are not "taxes" but are instead penalties not in compensation for an actual pecuniary loss. Therefore, the Trustees assert that the Government's claim is not entitled to priority treatment under bankruptcy law. In addition, the Trustees contend that the claims should be subordinated pursuant to 11 U.S.C. § 726(a)(4) or, alternatively, 11 U.S.C. § 510(c). The IRS opposes the Trustees' motion, maintaining that the liabilities in question are expressly labeled "excise taxes" and further asserts that the "pecuniary burden imposed by Section 4971(a) functions for the purpose of defraying the expenses of government or of undertakings authorized by it" and is therefore a tax. Memorandum of Law in Opposition to Trustees' Motion for Summary Judgment at p. 5 citing *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941).

The Government's claim arises from application of 26 U.S.C. § 4971(a) which provides:

Taxes on failure to meet minimum funding standards.

(a) Initial tax. For each taxable year of an employer who maintains a plan to which section 412 applies, there is hereby imposed a tax of 5 percent on the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year ending with or within such taxable year. The tax imposed by this subsection shall be paid by the employer responsible for contributing to or under the plan the amount described in section 412(b)(3)(A).

(b) Additional tax. In any case in which an initial tax is imposed by subsection (a) on an accumulated funding deficiency and such accumulated funding deficiency is not corrected within the correction period, there is hereby imposed a tax equal to 100 percent of such accumulated funding deficiency to the extent not corrected. The tax imposed by this subsection shall be paid by the employer described in subsection (a).

The present obligations stem from imposition by the IRS of the Section 4971(a) 5 percent tax on funding deficiencies for the years 1977–79.

Both of the Trustees' arguments are founded upon the long standing, broad Congressional policy against punishing the innocent creditors of the bankrupt. Section 57(j) of the Bankruptcy Act of 1898 was reflective of this policy. *See, In re Unified Control Systems, Inc.*, 586 F.2 1036, 1038 (5th Cir.1978) citing *U.S. v. Moore*, 366 F.2d 243 (5th Cir.1966); *In re Kline*, 403 F.Supp. 974, 977 (D.Md.1975) *aff'd* 547 F.2d 823 (4th Cir.1977). Under Section 64(a) of the Bankruptcy Act, debts due to the United States were entitled to priority, but Section 57(j) effectively limited the priority treatment of those obligations:

Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.

In essence, then, application of Section 57j gave priority treatment to only those government claims which were in compensation for an actual pecuniary loss. Thus, debts due to the federal government were scrutinized by the courts to ascertain whether they were in reality penalties not entitled to allowance in the bankruptcy case. *See e.g., United States v. New York*, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998 (1942). Although complete disallowance of penalty claims was eliminated with the enactment of the Bankruptcy Code, the policy of protecting innocent creditors from the impact of punitive debts was continued. Section 507(a)(6)(G) permits only pecuniary loss penalties related to a Section 507(a)(6) claim to enjoy priority treatment, while Section 726(a)(4) subordinates nonpecuniary loss penalties to the claims of other creditors. *See*, 3 Collier on Bankruptcy, *supra*, para. 507.04[7][h], *In re Compton Corp.*, 40 B.R. 875 (Bankr.N.D.Texas 1984).

It is well settled that the issue of whether an obligation constitutes a "tax" for purposes of the Bankruptcy Code is a federal question. *New Jersey v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 139, 51 L.Ed. 284 (1906); *New York v. Feiring, supra,* 313 U.S. at 285, 61 S.Ct. at 1029. Further, it is abundantly clear that the mere labeling of an exaction as a tax is not determinative of its character. *In re Kline, supra,* at 978 citing *New Jersey v. Anderson, supra; In re Unified Control Systems, Inc. supra* at 1037.

■ The United States Supreme Court has defined a tax for purposes of the Bankruptcy Code "as a pecuniary burden laid upon individuals or their property regardless of their consent, for the purposes of defraying expenses of government or undertakings authorized by it." *City of New York v. Feiring, supra* 313 U.S. at 285, 61 S.Ct. at 1029. Accordingly, courts have articulated a four-part test to determine whether a particular assessment qualifies for treatment as a tax for bankruptcy law purposes:

1. A voluntary pecuniary burden, regardless of name, laid upon individuals or property;
2. Imposed by, or under authority of the legislature;
3. For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and
4. Under the police or taxing power of the governmental unit.

*In re Farmers Frozen Food Company,* 221 F.Supp. 385 (N.D.Calif.1963); *In re Lorber Industries of California, Inc.,* 675 F.2d 1062, 1066 (9th Cir.1982); *In re Skjonsby Truck Line, Inc.,* 39 B.R. 971 (Bankr.D.N.D.1984).

Numerous cases have addressed the issue of whether an obligation due to a federal, state or local government is a "tax" within the meaning of the Bankruptcy Code and have included such assessments as workers' compensation premiums, *see In re Smith Jones,* 36 B.R. 408 (Bankr.D. Minn.1984) (not a tax); *In re Beaman,* 9 B.R. 539 (Bankr.D.Or.1980) (tax); *In re Int'l Automated Mach., Inc.,* 9 B.R. 575 (Bankr.N.D.Ohio 1981) (tax); *In re Payne,* 27 B.R. 809 (Bankr.D.Kan.1983) (not a tax); *In re Pan American Paper Mills, Inc.,* 618 F.2d 159 (1st Cir.1980) (tax); unemployment benefits, *In re Garden Inn Steak House,* 22 B.R. 830 (Bankr.N.D.Ohio 1982) (tax); *In re Skjonsby Truck Line, Inc., supra,* (tax); *In re Federal Insulation Development Corp.,* 14 B.R. 362 (Bankr.S.D. Ohio 1981) (forfeiture of 10% of overdue unpaid balance is not a tax); water charges, *In re Adams,* 40 B.R. 545 (E.D. Pa.1984) (not a tax); *McDowell v. City of Barberton,* 38 F.2d 786 (6th Cir.1930) (tax); garbage fees, *In re Ayala,* 35 B.R. 651 (Bankr.D.Utah 1983); poultry inspection fees, *In re South Atlantic Packers,* 28 B.R. 80 (Bankr.D.S.C.1983) (not a tax); self dealing "excise taxes", *In re Unified Control Systems, Inc., supra* (not a tax); *In re Kline, supra,* (not a tax); and reclamation "fees", *In re Jenny Lynn Mining Co.,* 780 F.2d 585 (6th Cir.1986) *cert. denied* — U.S. ——, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) (not a tax); *U.S. v. River Coal Co., Inc.,* 748 F.2d 1103 (6th Cir.1984) (tax).

Under the four-part analysis, the difficulty encountered by those who would equate taxes with punitive assessments lies principally with the third requirement. "A tax is an enforced contribution to provide for the support of government," whereas a penalty "is an exaction imposed by statute as punishment for an unlawful act." *U.S. v. La Franca,* 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931). The Trustees argue that the purpose of the statute at hand is punitive and therefore not a tax while the Government asserts that the statute "functions for the purpose of defraying expenses of government or of undertakings authorized by it" and constitutes a tax. No authority is given by the Government to support its proposition.[3]

---

**3.** The cases cited by the IRS, *In re Overly Hautz,* 57 B.R. 932 (Bankr.N.D.Ohio 1986) *aff'd* 81 B.R. 434 (N.D.Ohio 1987); *In re Unimet Corp.,* No. 685-00240 (Bankr.N.D.Ohio Nov. 17, 1986) and *In re A.C. Williams Co.,* No. 581-00489 (Bankr.N.D.Ohio 1986) are inapplicable as the

Two cases have dealt with a strikingly similar statute, 26 U.S.C. § 4941,[4] which imposes a "tax" on self-dealing between a "disqualified person" and a private foundation. *In re Unified Control Systems, Inc., supra; In re Kline, supra.* Like the Section 4971 exaction, Section 4941 bases the amount of tax due on a percentage of the amount involved and levies an additional assessment if the misdoing is not corrected within a specified period of time. In *Kline,* the court held that the main inquiry in determining whether or not an exaction is a penalty should be directed to the purpose of the statute. *In re Kline, supra,* at 977 (citation omitted). After reviewing the relevant Internal Revenue Code Sections and accompanying legislative history, the court concluded:

> An enactment which has as its purpose the punishment of conduct perceived as wrongful should be deemed a "penalty" under § 57j regardless of the terminology employed by the legislature. A measure which has as one of its substantial purposes the raising of revenue presents a more complex problem; in such a case, terminology may play an important role, *see United States v. Childs* [266 U.S. 304, 45 S.Ct. 110, 69 L.Ed.2d 299], *supra; United States v. New York* [315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998], *supra.* In this case, however, the sole substantial purpose of §§ 4941 and 4944 was to penalize wrongful conduct. Although such penalties are well justified to prevent abuses by foundation managers and other disqualified persons, it would fly in the face of the purpose of § 57j of the Bankruptcy Act to give such assessments a priority over the claims of en-

tirely innocent creditors, except insofar as the government can show pecuniary loss.

*Id.* at 978.

Any doubts about the purpose of the statute at bar, Section 4971, are clearly resolved by a review of the relevant legislative history accompanying its enactment. Both the House and Senate Reports confirm the punitive aim of the legislation:

> The bill also provides new and more effective penalties where employers fail to meet the funding standards. In the past, an attempt has been made to enforce the relatively weak funding standards existing under present law by providing for immediate vesting of the employees' rights, to the extent funded, under plans which do not meet these standards. This procedure, however, has proved to be defective since it does not directly penalize those responsible for the underfunding. For this reason, the committee bill places the obligation for funding and the penalty for underfunding on the person on whom it belongs—namely, the employer.

H.R.Rep. No. 807, 93rd Cong., 2nd Sess. reprinted 1974 U.S.Code Cong. & Admin. News 4694; *see also* S.Rep. No. 383, 93rd Cong., 2nd Sess. reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4909. The congressional committee reports further provide:

> Additionally, the committee believes that current sanctions on an employer for failure to adequately fund his qualified plan are inappropriate since they

issue of whether the Section 4971 liabilities were taxes was not controverted.

4. Sec. 4941. TAXES ON SELF–DEALING.
   (a) Initial taxes.
   *(1) On self-dealer.* There is hereby imposed a tax on each act of self-dealing between a disqualified person and a private foundation. The rate of tax shall be equal to 5 percent of the amount involved with respect to the act of self-dealing for each year (or part thereof) in the taxable period. The tax imposed by this paragraph shall be paid by any disqualified person (other than a foundation manager acting only as such) who participates in the act of self-dealing. In the case of a government official (as defined in section 4946[c]), a tax shall be imposed by this paragraph only if

such disqualified person participates in the act of self-dealing knowing that it is such an act.
*(2) On foundation manager.* In any in which a tax is imposed by paragraph (1), there is hereby imposed on the participation of any foundation manager in an act of self-dealing between a disqualified person and a private foundation, knowing that it is such an act, a tax equal to 2½ percent of the amount involved with respect to the act of self-dealing for each year (or part thereof) in the taxable period, unless such participation is not willful and is due to reasonable cause. The tax imposed by this paragraph shall be paid by any foundation manager who participated in the act of self-dealing.

**400**

may not affect an employer's decision to underfund his plan. For example, an employer may not feel any reason to make the minimum required contributions to his plan if the only consequence of underfunding is to give his employees vested rights in the amounts that are already funded. To resolve this problem, the committee's bill provides an excise tax on the failure to meet the minimum funding requirements.

S.Rep. No. 383, 93rd Cong., 2nd Sess. reprinted in 1974 U.S.Code Cong. & Admin. News 4941; *see also*, H.R.Rep. No. 807, 93rd Cong., 2nd Sess. reprinted in 1974 U.S.Code Cong. & Admin.News 4740.

Of course, in the broadest sense, Section 4971 assessments will help alleviate any burdens incurred by the federal government as a result of an employer's default in pension plan contributions. However, the court notes that an assessment is levied regardless of whether the funding deficiency is eventually corrected or whether the government ultimately assumes responsibility for payments to be made under the plan. Further, such a broad construction would effectively eliminate any meaning to the third part of the test, as almost every exaction imposed by the government would qualify. Finally, no facts or authority in support of its position have been offered by the IRS.

■ Accordingly, the court holds that assessments imposed by the federal government pursuant to 26 U.S.C. § 4971 are for punitive purposes and therefore do not constitute "taxes" within the meaning of Section 507(a)(6) of the Bankruptcy Code.

The issue then becomes whether the Government's claim qualifies under Section 507(a)(6)(G) as a pecuniary loss penalty. The previous discussion exemplifies that the assessments are clearly not in compensation for an actual pecuniary loss and, accordingly, the court finds that the assessments are not entitled to priority under Section 507(a)(6)(G) of the Bankruptcy Code.

### B.

The Trustees urge the court to subordinate the claim of the Internal Revenue Service to the claims of other general unsecured creditors. They assert that Section 726(a)(4) or, alternatively, Section 510(c)(1) of the Bankruptcy Code operate to subordinate the Government's claim. No opposition has been proffered on behalf of the IRS with respect to this request.

Section 726(a) of the Bankruptcy Code provides in relevant part:

Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3) or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the

filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

Although Section 726(a) is applicable by its literal terms only to Chapter 7 liquidation cases, a few courts have found that it applies to liquidating plans under Chapter 11 as well. *See, In re Erlin Manor Nursing Home, Inc.,* 36 B.R. 672 (Bankr.Mass. 1984); *In re Compton Corp., supra. See also,* 3 Collier on Bankruptcy para. 726.01 (15th ed. 1987). However, at least one court has found expressly to the contrary. *See, In re Colin,* 44 B.R. 806 (Bankr.S.D.N. Y.1984).

The court finds that it need not become embroiled in this controversy as Section 510(c) provides an appropriate vehicle by which to subordinate the Government's claim. Section 510(c) provides:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

Section 510(c) appears to codify case law which had developed in the absence of express statutory authority, to allow the bankruptcy court to subordinate claims under principles of equity.

The issue of whether a penalty claim could be subordinated under Section 510(c) in a Chapter 11 case absent fraud or misconduct was amply addressed by the bankruptcy court in *In re Colin, supra:*

"Principles of equitable subordination" is not without limit or meaning. The classic case for equitable subordination involves inequitable conduct by the claimant resulting in injury to other creditors. *See, Matter of Mobile Steel Co.,* 563 F.2d 692, 699–700 (5th Cir.1977); *e.g., Matter of All Products Co.,* 32 B.R. 811, 815, 10

B.C.D. 1363, 9 C.B.C.2d 438 (Bankr.E.D. Mich.1983). Where the Swift trustee errs, however, is in his suggestion that Congress determined that inequitable conduct represents the exclusive basis for equitable subordination under § 510(c). Subordination under the former Bankruptcy Act, however, was not so limited. Certain claims could be subordinated by virtue of their nature. *See, In the Matter of Stirling Homex Corp.,* 579 F.2d 206 (2d Cir.1978). The legislative history, moreover, reveals that Congress intended the bankruptcy courts to develop the concept and envisioned that penalty claims by their very nature, are to be subordinated:

It is intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle. To date, under existing law, *a claim is generally subordinated* only *if* the holder of such claim is guilty of inequitable conduct, or *the claim itself is of a status susceptible to subordination, such as a penalty* or a claim for damages arising from the purchase or sale of a security of the debtor.

112 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,412 (Oct. 6, 1978).

Punitive damages claims are penalty claims. They are imposed, not to afford redress, but to deter future wrongful conduct. *Frank Irey, Jr., Inc. v. Occupational Safety and Health Review of Comm'n,* 519 F.2d 1200 (3d Cir.1975) *aff'd* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1976); *Collins v. Brown,* 268 F.Supp. 198 (D.D.C.1967); *Sullivan v. Associated Billposters & Distributors,* 6 F.2d 1000 (2d Cir.1925). If, as in this case, punitive damages are to be paid, not by the alleged wrongdoer, but by his estate, the purpose of the penalty is not served. The effect would be to force innocent creditors sharing in the debtor's assets to pay for his wrongdoing. *Matter of GAC Corporation,* 681 F.2d 1295, 1301 (11th Cir.1982). Such a result is clearly untenable, and patently inequitable.

*Colin, supra* at 810 (emphasis added). The court concurs with the rationale expressed

by the *Colin* court as it pertains to the application of Section 510(c) to penalty claims. The court finds it inequitable to permit the federal government to, effectively, punish innocent creditors of the estate for wrongs inflicted by the now defunct corporations. Accordingly, the court will subordinate the claim of the United States Government to the general unsecured creditors.

### CONCLUSION

Based upon the foregoing analysis, the court holds that assessments levied by the United States Government, Internal Revenue Service pursuant to 26 U.S.C. § 4971 are not for the "purpose of defraying expenses of the government or undertakings authorized by it" but rather to sanction an employer who fails to make minimum pension plan funding contributions, and, accordingly, is not a tax within the meaning of Section 507(a)(6) of the Bankruptcy Code. The court further finds that principles of equity under Section 510(c) of the Bankruptcy Code requires the court to subordinate the claim of the Government for assessments made under Section 4971 of the Internal Revenue Code to the claims of other general unsecured creditors.

An order consistent herewith shall issue.