**In re AIRLIFT INTERNATIONAL, INC., Debtor.**

**William D. SEIDLE, Trustee, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**Bankruptcy No. 89–1053–CIV.**

United States District Court, S.D. Florida.

May 31, 1990.

· ORDER

MARCUS, District Judge.

THIS CAUSE comes before the Court on an Appeal by the Internal Revenue Service ("IRS") on behalf of the United States of America, Appellant, from a Final Judgment of the United States Bankruptcy Court for the Southern District of Florida entered March 21, 1989. The Bankruptcy Court granted the Trustee's (Appellee's) Motion for Summary Judgment holding that the IRS's claim for taxes pursuant to 26 U.S.C. § 4971(a) was not entitled to administrative priority under the Bankruptcy Code. In addition, the Court subordinated the IRS' claim to the claims of the general creditors pursuant to 11 U.S.C. § 510(c). Appellant argues that the bankruptcy court erred as a matter of law in granting the Trustee's Motion for Summary Judgment.

I.  *Standard of Review*

A district court must review the bankruptcy court's findings of fact by the "clearly erroneous" standard of review, even when the lower court's findings do not rest on credibility determinations but on physical or documentary evidence or inferences from other facts. *Jefferson v. Mississippi Gulf Coast YMCA, Inc.,* 73 B.R. 179 (S.D.Miss.1986); *see Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); 11 U.S.C. Bankruptcy Rule 8013 (1990). Legal conclusions by the bankruptcy court, however, are subject to de novo review by the dis-

trict court. *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir. 1986). The issues raised by Appellant in the instant case concern matters of law properly subject to plenary review.

## II. *IRS Appeal*

The IRS appeals the decision of the bankruptcy court denying administrative expense priority to IRS's claims in Claim Number 3551, based on 26 U.S.C. § 4971(a).[1] On appeal, the IRS asserts claims for Section 4971(a) taxes for periods up to and including June 30, 1984 on two pension plans maintained by the Debtor. The IRS has also appealed the bankruptcy court's subordination, pursuant to 11 U.S.C. § 510(c), of the IRS's Section 4971(a) claims to the claims of the general unsecured creditors.

We reproduce and incorporate the bankruptcy court's narration of the background and procedural history which has not been challenged by the parties:

[W]hen Airlift filed its petition for relief under Chapter 11 of the Bankruptcy Code on June 4, 1981, Airlift, maintained two pension plans, the A Plan and B Plan (collectively the "Plans"), as part of the then-existing collective bargaining agreement between the Debtor and the Air Line Pilots Association ("ALPA"). The record reflects that at no time after the filing of the bankruptcy petition were the Airlift pilots, collectively holding very substantial claims against the Airlift estate, led to believe that they would accrue any additional pension benefits from continuing to perform services. The record demonstrates that the Airlift pilots were on notice that there would be no further accrual of pension benefits.

Because of Airlift's financial condition, Airlift failed to meet the minimum funding standards for both Plans for the plan year ending June 30, 1981, subjecting Airlift to potential liability under 26 U.S.C. § 4971. IRC section 4971 imposes on an employer who maintains a quali-

fied retirement plan subject to the minimum funding requirements a tax of five percent (referred to as "first tier tax") of the amount of the "accumulated funding deficiency" determined as of the end of the plan year. If the accumulated funding deficiency is not corrected within a certain period, IRC section 4971(b) imposes a tax (referred to as "second tier tax") equal to 100 percent of the accumulated funding deficiency. The IRS denied Airlift's request as to a waiver of the first tier tax provided under IRC section 4971(a), but granted the waiver request as to the 100 percent second tier tax prescribed by IRC section 4971(b).

On June 15, 1984, the Trustee sought court approval of the rejection of the collective bargaining agreement with ALPA and all the Debtor's obligations under the attendant pension plans. The record reflects that both the PBGC and the IRS were given notice of the Trustee's motion. The PBGC objected to Trustee's rejection motion, but the IRS did not do so. On September 17, 1984, this Court entered an Order approving the rejection of the collective bargaining agreement and its attendant pension plans, including the obligations arising thereunder.

Following the rejection of the pension plans, the PBGC sought administrative expense priority for its claims including those for unpaid contributions due pursuant to ERISA in regard to Plan A, among other claims. On July 11, 1985, this Court entered an Order disallowing the PBGC's administrative priority claims on the grounds that rejection of the collective bargaining agreement relegated any post-petition funding obligations which may have accrued to prepetition status by virtue of 11 U.S.C. § 502(g), and that any post-petition funding obligation was not essential to preserving the estate. The PBGC filed an appeal to the District Court which was

---

1. 26 U.S.C. § 4971(a), for the years in question, provided: **Initial Tax.**—For each taxable year of an employer who maintains a plan to which section 412 applies, there is hereby imposed a tax of 5 percent on the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year ending with or within such taxable year.

subsequently dismissed on procedural grounds.

On August 30, 1988, the IRS filed a Request for Payment of Internal Revenue Taxes (Form 6338–A), amending and superseding the IRS' previous two amendments to its proof of claim (Claim Number 3152 and 3153), claiming, among other things, an administrative expense for taxes and accrued interest with respect to Plan A for the year ending March 25, 1982 and with respect to Plan B for the plan years ending June 30, 1982–86. The IRS also filed a proof of claim for taxes due with respect to both Plans for the plan year ending June 30, 1981, claiming an unsecured priority status under section 507(a)(6) of the Bankruptcy Code. After the action had been set on the trial calendar, the IRS filed an amended claim contending the entire amount claimed was entitled to administrative expense priority (Claim Number 3551). At the hearing on the Trustee's motion for summary judgment, the Court permitted the IRS' tardy amendment and deemed the Trustee's Objection and Counterclaim amended to address the IRS' last amended claim (Claim Number 3551).

Order of the Bankruptcy Court on Trustee's Motion for Summary Judgment, March 21, 1989. 97 B.R. 664.

In its Order on Trustee's Motion for Summary Judgment, entered March 21, 1989, the bankruptcy court held against the IRS's claim to administrative priority for Section 4971(a) taxes on the basis of three independent reasons:

First, the claim is not for post-petition taxes because, as a matter of law, the rejection of the collective bargaining agreement and its attendant pension plans terminated the Plans prior to the filing of the bankruptcy petition and relegated to pre-petition status any obligation arising under the Plans pursuant

to section 502(g). Any contrary argument advanced by the IRS is barred by the doctrine of collateral estoppel. Second, the IRS' claim is not for actual, necessary costs and expenses of preserving the estate. 11 U.S.C. § 503(b)(1)(A). As recognized in this Court's prior decision, which the IRS cannot now collaterally attack, any funding obligations accruing post-petition are attributable to services rendered pre-petition. Finally, the IRS' claim is punitive in nature; thus, the underlying liability does not qualify as a tax for bankruptcy purposes. Further, the Court grants the Trustee's request to have the IRS' claim subordinated pursuant to section 510(c) on the ground that it would be inequitable to allow the claim, especially in light of the punitive purpose behind the IRS' claim and the fact that the failure to subordinate the IRS' claim would harm Airlift's innocent creditors.

Appellant challenges all three grounds cited by the bankruptcy court in support of its decision to deny the IRS priority claim. Fundamental to all of Appellant's arguments, however, is the contention that the Debtor incurred § 4971(a) taxes post-petition—that is, Appellant's claim of administrative expense priority will prevail only if the Debtor incurred post-petition § 4971(a) taxes.

On appeal, the IRS contends that 11 U.S.C. § 502(g) [2] does not operate to relegate its claims to pre-petition status. Appellant argues that its § 4971(a) tax claims, in connection with the Debtor's pension plan accumulated funding deficiency, did not "aris[e] from the rejection ... of an executory contract" pursuant to Section 502(g). Appellant argues that the taxes in question did not arise upon the rejection of the collective bargaining agreement; but instead, that they arose at the end of each plan year upon the determination that there was an accumulated funding deficien-

---

**2.** 11 U.S.C. § 502(g) (1990) provides:

A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be deter-

mined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

cy for the plans. Since the taxes claimed were incurred post-petition, it is argued, the IRS is entitled to first priority as to the administrative expenses of the bankruptcy estate pursuant to 11 U.S.C. § 503(b).

In essence, Appellant's argument on appeal is based on the timing of the bankruptcy court's approval of the Trustee's rejection of the collective bargaining agreement. Appellant argues that until the court approved the rejection and consequent termination of the pension plans, the Debtor continued to incur post-petition § 4971(a) tax liability for failure to adequately fund its pension plans. We note that Appellant does not contest the termination of the pension plans effective immediately prior to the filing of the bankruptcy petition. Yet, Appellant urges that its claims arose post-petition at the end of each succeeding year in which the pension plans, presumably, would have been in effect if not for the bankruptcy court's approval of their termination. We are not persuaded by Appellant's argument.

■ The bankruptcy court did not err as a matter of law in finding that the § 4971(a) tax liability claimed by Appellant was not incurred post-petition and consequently not entitled to administrative expense priority. The tax liability claimed by Appellant is dependent on the effective term of the pension plans. That is, § 4971(a) tax liability accrues, on the basis of an accumulated funding deficiency, at the end of a pension plan year for each taxable year in which an employer maintained an applicable pension plan. *See In Re: Wheeling–Pittsburgh Steel Corp.*, 103 B.R. 672 (W.D.Pa.1989) (The court noted that it is a well-settled rule that the time when a tax obligation accrues is the critical factor rather than the date the tax return is due. Under substantially similar factual circumstances as presented in the instant appeal, the Court held that Section 4971(a) taxes were based on pre-petition transactions or events and thus were not entitled to administrative expense status.) There is no dispute here that the Debtor's pension plans were effectively terminated as of June 4, 1981. On September 17, 1984 the

bankruptcy court entered an order approving the rejection of the former collective bargaining agreement, including the pension plans in force and running concurrent with that agreement. By operation of Section 502(g), claims arising from the rejection of the collective bargaining agreement and the relevant pension plans were relegated to pre-petition status. *See* Order on Objection to PBGC Administrative Priority Claims, *In Re: Airlift International, Inc.*, Case No. 81–00846–BKC–SMW (July 11, 1985) ("The Court concludes that the rejection of the ALPA collective bargaining agreement effectively rejected the Debtor's obligation to continue funding the pension plans. Accordingly, any post-petition funding obligations which may have accrued under ERISA's minimum funding standards have been relegated to pre-petition status by virtue of 11 U.S.C. § 502(g).") Consequently, on the basis of the pension plans' termination immediately prior to the filing of the bankruptcy petition, any tax liability with respect to the Debtor's funding of those plans was incurred pre-petition and is not entitled to administrative expense priority.

Furthermore, we are not persuaded by the distinction drawn by the Appellant here between "obligations under an executory contract" and "claims arising from the rejection of an executory contract" for purposes of Section 502(g). In support of its argument, Appellant asserts that the United States was not injured by the rejection of the collective bargaining agreements and suffered no damages as a result of that rejection. Consequently, Appellant maintains, its claims did not arise from the Trustee's rejection of the collective bargaining agreement and are not subject to Section 502(g) relegation to pre-petition status.

In our view, the Trustee's rejection of the collective bargaining agreement was, in fact, an event triggering Appellant's § 4971(a) claims. Rejection of the collective bargaining agreement by the Trustee included rejection and consequent termination of the pension plans. In turn, termination of the pension plans marked the end of the plan year and gave rise to a

§ 4971(a) taxing event. *See In Re: Mid Region Petroleum, Inc.*, 111 B.R. 968 (N.D.Oklahoma 1990) (finding that accrued but unpaid post-petition rent pursuant to a rejected executory lease agreement was "a claim arising from the rejection" of a lease and was to be treated as a general unsecured claim under 11 U.S.C. § 502(g).) Appellant, itself, has conceded that its claim for § 4971(a) taxes for the period ending June 30, 1985 arose from the rejection of the collective bargaining agreement, at the time of the bankruptcy court's approval on September 17, 1984, and is consequently subject to § 502(g) relegation to pre-petition status. Appellant has not appealed the bankruptcy court's ruling as to its claim for Section 4971(a) tax for the period ending June 30, 1985. In our view, Appellant's claims come within the language of Section 502(g) and should be accorded pre-petition status.

■ In addition, we find no error in the bankruptcy court's decision to subrogate the IRS's claims to the claims of the general creditors of the estate under Section 510(c). Title 11, Section 510(c) of the United States Code provides:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

It is not disputed, and we agree, that under Section 510(c), tax penalties or punitive damage claims are susceptible to subordination. *See Matter of GAC Corp.*, 681 F.2d 1295 (11th Cir.1982); *In the Matter of Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990); *In Re: Merwede*, 84 B.R. 11 (Bkrtcy.D.Conn.1988); *Matter of Mansfield Tire & Rubber Co.*, 80 B.R. 395 (Bkrtcy.N.D.Ohio 1987); *Matter of Colin*, 44 B.R. 806 (Bkrtcy.S.D.N.Y.1984); *see*

*also* 124 Cong.Rec. H 11,095 (daily ed. Sept. 28, 1978); S 17,412 (daily ed. October 6, 1978) ("To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim itself is susceptible to subordination, such as a penalty ...")

Furthermore, Section 4971 taxes have been construed as a penalty and not a tax for bankruptcy purposes. *Matter of Mansfield Tire & Rubber Co.*, 80 B.R. 395 (Bkrtcy.N.D.Ohio 1987). In a detailed analysis of the nature and purpose of 26 U.S.C. Section 4971, the court in *Mansfield* found that § 4971 did not meet the requirements for a tax under the Bankruptcy Code. *See City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *Mansfield*, 80 B.R. at 398; *In Re: Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir.1982). The Court held that assessments levied pursuant to § 4971 are not for the "purpose of defraying expenses of the government or undertakings authorized by it" but rather to sanction an employer who fails to make minimum pension plan funding contributions. Indeed, the legislative history behind § 4971 reflects its punitive nature. Both the House and Senate Reports confirm the punitive aim of the legislation. H.R.Rep. No. 807, 93rd Cong., 2nd Sess. reprinted 1974 U.S. Code Cong. & Admin.News 4694 ("The bill also provides new and more effective penalties where employers fail to meet the funding standards.... the committee bill places the obligation for funding and the penalty for underfunding on the person on whom it belongs—namely, the employer."); S.Rep. No. 383, 93rd Cong., 2nd Sess. reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4909 ("[T]he committee believes that current sanctions on an employer for failure to adequately fund his qualified plan are inappropriate since they may affect an employer's decision to underfund his plan.")

In our view, the bankruptcy court did not err as a matter of law in subrogating, pursuant to 11 U.S.C. § 510(c), the IRS's claim for § 4971 taxes. The bankruptcy court found the § 4971 tax to be a penalty, and, since its purpose is to deter future

underfunding of pension plans, that it is inequitable to have the wrongdoer's estate pay to the detriment of its innocent creditors. The bankruptcy court held that equity demands the IRS's claim be subordinated. In the alternative, employees, the intended beneficiaries of the pension plans who constitute a substantial group of Airlift's creditors, will lose to a tax because of their defunct pension plans. We believe the bankruptcy court was correct. Accordingly, on the basis of the foregoing analysis, the bankruptcy court's decision of March 21, 1989 is AFFIRMED.

DONE AND ORDERED.