**In the Matter of Justin COLIN, Debtor.**

**Bankruptcy No. 82 B 11541.**

United States Bankruptcy Court,
S.D. New York.

Nov. 30, 1984.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Creditors Committee; Stanley T. Lesser, Steven J. Glassman, Menachem Z. Rosensaft, New York City, of counsel.

Shea & Gould, New York City, for debtor-in-possession; Herman Bursky, Richard Czaja, New York City, of counsel.

Kramer, Levin, Nessen, Kamin & Soll, New York City, for Manufacturers Hanover Trust Co., Kenneth Eckstein, New York City, of counsel.

David Farmer, Los Angeles, Cal., Trustee of Swift Aire Lines.

Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for Trustee of Swift Aire Lines, Inc.; David J. McCarty, Los Angeles, Cal., of counsel.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The creditors committee ("Committee") of the Estate of Justin Colin ("Estate" or "Debtor") seeks an order of this Court subordinating the punitive damages portion of the claim against the estate of David Y. Farmer, trustee in bankruptcy ("Swift Trustee") for the Estate of Swift Aire Lines, Inc. ("Swift").

### I

In May, 1982, the Swift Trustee commenced an adversary proceeding against Justin Colin ("Colin") in the United States Bankruptcy Court for the Central District of California seeking $20,775,000 in damages for alleged breaches of contract and fiduciary duty by Colin while he served as a director of Swift prior to the filing of its bankruptcy petition on September 18, 1981. The complaint consisted of three causes of action: (i) a claim of contractual damages amounting to $775,000 for an alleged failure by Colin to fulfill an obligation to advance funds to Swift; (ii) a claim of $10,-000,000 in damages for an alleged breach by Colin of his fiduciary duty as a director of Swift or an implied covenant of good faith and fair dealing in allegedly causing the Swift board of directors to authorize the filing of Swift's bankruptcy petition; and (iii) a claim of $10,000,000 in punitive damages for allegedly maliciously, oppressively and with intent to defraud Swift having wrongfully caused that bankruptcy filing.

Upon Colin's commencement on August 11, 1982, of his own case under Chapter 11 of the Code, the Swift action was stayed pursuant to § 362(a) of the Code and has remained so for more than two years. The

Swift trustee on January 12, 1983, filed a claim against the Estate based on the same grounds asserted in his complaint. The Committee objected to allowance of the claim on July 13, 1984. In May, 1984, this Court terminated the debtor's exclusive period for filing a plan of reorganization, provided by § 1121 of the Code. The Committee subsequently filed a plan, and its disclosure statement was approved by this Court by Order dated November 9, 1984. The hearing on confirmation is scheduled for December 4, 1984. All parties desire to have the issue presented in the instant motion resolved prior to that date.

## II

In urging subordination of the Swift Trustee's punitive damages claim, the Committee advances two different theories. First, it argues that § 726(a)(4) of the Code, which specifically provides for the subordination of punitive damage claims to a fourth priority in order of distribution, should be made applicable to cases under Chapter 11 by operation of the "best interests of creditors test" of § 1129(a)(7) of the Code. Alternatively, the Committee urges this Court to subordinate the claim on equitable grounds pursuant to § 510(c) of the Code.[1]

### A. The Applicability of § 726(a)(4) to Chapter 11 Cases

Penalty claims receive different treatment under the Code than they did under the former Bankruptcy Act. Fines and penalties which were not compensation for actual pecuniary loss were formerly disallowed. Bankruptcy Act of 1898 (as amended, 1969), section 57; 11 U.S.C. § 93; (re-

pealed October 1, 1979); *In re Kline*, 403 F.Supp. 974 (D.Md.1975), aff'd 547 F.2d 823 (4th Cir.1975); *In re Tedlock Cattle Co.*, 552 F.2d 1351 (9th Cir.1977). Under the Code, such claims are either relegated to a fourth priority in Chapter 7, pursuant to § 726(a)(4), as discussed above, or they may be subordinated to any other claim on equitable considerations pursuant to § 510(c).

Section 726(a)(4) provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed— * * *

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

Found in subchapter II of Chapter 7, this section, pursuant to § 103(b) of the Code, is directly applicable only to cases under that chapter. Thus, at first glance, § 726(a)(4) appears to be irrelevant to a distribution scheme under a Chapter 11 plan of reorganization. The Committee, however, suggests that the so-called "best interests of creditors test" of § 1129(a)(7) of the Code requires the Court to consider the Chapter 7 distribution scheme, thereby incorporating those provisions into Chapter 11 in applying that test.

This approach has initial surface appeal since a plan may not be confirmed under § 1129 of the Code unless each unsecured creditor who does not accept a plan

---

1. In opposition to subordination, and in addition to disputing the merits of the committee's two legal arguments, the Swift Trustee argues that the operation of §§ 1123(a)(4) and 1123(a)(3) effectively preclude subordination of the Swift claim, since the proposed plan places it in a class with other unsecured creditors. Since subordination would result in treatment different from that of other claims within the same class, it, according to the Swift Trustee, would contravene the express terms of § 1123(a)(4) of the Code. It is similarly argued

that the plan's failure to specify the treatment of the subordinated claim would violate § 1123(a)(3).

Such issues involving the propriety of classification in a plan of reorganization and compliance with the Code are more appropriately raised at a hearing on confirmation held pursuant to § 1128 of the Code when it will become apparent whether any objections to the plan have been made by Creditors and whether such issues need be resolved. Consequently, they are not addressed here.

"will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date; ..." § 1129(a)(7)(A)(ii). Determination of that issue requires consideration of the effect of the priorities afforded by § 726, including the subordinated treatment given to claims for punitive damages:

In order to determine the hypothetical distribution in a liquidation, the court will have to consider the various subordination provisions of proposed 11 U.S.C. 510, 726(a)(3), 726(a)(4), and the postponement provisions of proposed 11 U.S.C. 724.

House Rep. 95–595, 1st Sess. 412–13 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6368.

Neither the Code nor the legislative history, however, suggests that, in making the comparison between distribution under the proposed Chapter 11 plan, and the statutory distribution pursuant to § 726(a), that a bankruptcy court should equalize the two proposed distributions by reading the provisions of one into the other, absent specific statutory authorization. Far from containing such authorization, § 103 denies it. Neither does § 1129(a)(7) authorize an incorporation of § 726(a) into Chapter 11. That section only mandates that the Court not confirm a reorganization plan if a dissenting creditor will receive more on account of his claim in Chapter 7 than he will under the plan. In this case, the confirmation of the proposed plan is not yet in issue. There is no dissenting creditor before the Court at this time, and one may never materialize. Since the "best interests of creditors test" of § 1129(a)(7) only becomes applicable upon the casting of a negative vote against the plan, the committee's argument is premature even if this Court could accept its questionable statutory interpretation.[2]

The Committee attempts to bolster its argument with a discussion of equitable considerations, such as the argument that allowing penalty claims to share *in pari passu* with other unsecured claims would make confirmation of Chapter 11 plans impossible because the proportional dividends to unsecured creditors would always be greater in Chapter 7 with its express subordination provisions. Since a plan cannot be confirmed over the vote of a dissenting creditor absent a § 1129(a)(7) determination that the creditor will receive more in Chapter 11, the Committee argues that absent imposition of § 726(a) subordination, all reorganizations which seek to deal with penalty claims would be doomed to failure. Thus, some courts have interpreted § 1129(a)(7) to incorporate § 726(a)(4) of the Code. *In re Erlin Manor Nursing Home*, 36 B.R. 672, 678 (Bankr.D.Mass. 1984); *In re Compton Corporation*, 40 B.R. 875, 10 C.B.C.2d 1239, 1241–42 (Bankr.N.D.Tx.1984).

■ This analysis fails for several reasons. First, the best interests of creditors test is inapplicable until a negative vote is cast with respect to the plan. Second, while the possibility of constraints on effectuation of a plan is certainly a valid concern, there is no guarantee that general creditors will vote against a plan that does not contemplate subordination of penalty claims or that the best interests of creditors test will not be satisfied. Third, incorporation of § 726 into Chapter 11 would seem to run afoul of the unambiguous provision of § 103 to the contrary. "[W]hen the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words." *United States v. Holroyd*, 732 F.2d 1122, 1125 (2d Cir.1984). Finally, incorporation of § 726 into Chapter 11 would add an additional layer of constraints to the nego-

---

**2.** While § 1129(b)(2)(B) in requiring, with respect to a dissenting class of holders of unsecured claims, payment of full value before payment is made to holders of junior claims or interests would incorporate those priorities by reference, here we have yet to be informed of a dissenting class.

tiation of plans that Chapter 11 is designed to foster, a flexibility that is largely limited only by protection of minority creditors and dissenting classes. *See* § 1129(a), and § 1129(b)(2). For these reasons, this Court finds the concerns expressed in *Compton* and *Erlin Manor* to be more appropriately addressed in the context of equitable subordination pursuant to § 510(c) of the Code.

### B. *Subordination Under § 510(c)*

In pertinent part § 510(c)(1) of the Code provides for subordination of claims and interests "under principles of equitable subordination."

■ "Principles of equitable subordination" is not without limit or meaning. The classic case for equitable subordination involves inequitable conduct by the claimant resulting in injury to other creditors. *See, Matter of Mobile Steel Co.,* 563 F.2d 692, 699–700 (5th Cir.1979); *e.g., Matter of All Products Co.,* 32 B.R. 811, 815, 10 B.C.D. 1363, 9 C.B.C.2d 438 (Bankr.E.D.Mich. 1983). Where the Swift trustee errs, however, is in his suggestion that Congress determined that inequitable conduct represents the exclusive basis for equitable subordination under § 510(c). Subordination under the former Bankruptcy Act, however, was not so limited. Certain claims could be subordinated by virtue of their nature. *See, In the Matter of Stirling Homex Corp.,* 579 F.2d 206 (2d Cir.1978). The legislative history, moreover, reveals that Congress intended the bankruptcy courts to develop the concept and envisioned that penalty claims by their very nature, are to be subordinated:

> It is intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor.

112 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17, 412 (Oct. 6, 1978).

■ Punitive damages claims are penalty claims. They are imposed, not to afford redress, but to deter future wrongful conduct. *Frank Irey, Jr., Inc. v. Occupational Safety and Health Review Comm'n,* 519 F.2d 1200 (3d Cir.1975) *aff'd* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1976); *Collins v. Brown,* 268 F.Supp. 198 (D.D.C. 1967); *Sullivan v. Associated Billposters & Distributors,* 6 F.2d 1000 (2d Cir.1925). If, as in this case, punitive damages are to be paid, not by the alleged wrongdoer, but by his estate, the purpose of the penalty is not served. The effect would be to force innocent creditors sharing in the debtor's assets to pay for his wrongdoing. *Matter of GAC Corporation,* 681 F.2d 1295, 1301 (11th Cir.1982). Such a result is clearly untenable, and patently inequitable.

■ In interpreting this provision, "our lodestar must be the statute's fundamental purpose." *United States v. Holroyd,* at p. 1125, citing *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1087 (2d Cir.1979), rev'd on other grounds, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). The clear implication of the statute and its legislative history is that a claim for punitive damages should not be allowed to share *in pari passu* with other general unsecured creditors for to do so would result in innocent creditors paying for the debtor's alleged misconduct. It can hardly be imagined that Congress sought to elevate previously unallowable claims to full rank in light of the legislative history noted above and without any firm indication that it so desired.

The motion for subordination of the punitive damage portion of the Swift claim is granted. The Swift trustee's claim for punitive damages against the estate shall, pursuant to § 510(c) of the Code, be accorded a status inferior to all general nonsubordinated unsecured claims.

IT IS SO ORDERED.