**In re John W. MERWEDE, Jr., Debtor.**

**Bankruptcy No. 5–85–00480.**

United States Bankruptcy Court,
D. Connecticut.

March 31, 1988.

Ira B. Charmoy, Charmoy & Kanasky, Bridgeport, Conn., for debtor.

Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for I.R.S.

Daniel Meister, Norwalk, Conn., Chapter 13 Trustee.

MEMORANDUM OF DECISION AND ORDER ON OBJECTION OF INTERNAL REVENUE SERVICE TO SUBORDINATION OF PENALTY CLAIM

ALAN H.W. SHIFF, Bankruptcy Judge.

The Internal Revenue Service objects to confirmation of the debtor's chapter 13 plan for the reason that it impermissibly subordinates an IRS penalty.

BACKGROUND

On July 15, 1985, the debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. On January 31, 1986, the IRS filed an amended Proof of Claim, which asserted, *inter alia*, "C. Unsecured General Claims", consisting of a "[p]enalty to date of petition on unsecured priority claims ... $5,758.27", for the failure of the debtor to file income tax returns and pay taxes for the years 1983 and 1984. On June 23, 1986, the debtor filed a First Amended Plan[1] which, relying upon Code §§ 726(a)(4) and 510(c)(1), subordinated the IRS penalty to the other allowed unsecured claims. The debtor has subsequently abandoned subordination under § 726(a)(4),[2] but reasserts the argument that unless the IRS penalty is subordinated under § 510(c)(1), other general creditors will have to share a distribution with the IRS and to that extent, bear the burden of the debtor's wrongful conduct.[3] The IRS counters with the argument that the legislative history of § 510(c)(1) precludes equitable subordination of a tax claim, and alternatively that, even if applicable, the doctrine of equitable subordination should be limited, as it traditionally is, to those instances where a credi-

---

1. The debtor filed two versions of his First Amended Plan: February 3, 1986 and June 23, 1986. The latter subordinated the IRS penalty and is the subject of this decision.

2. During oral argument debtor's counsel conceded that where, as here, an estate has no free

assets, subordination under § 726(a)(4) is not applicable.

3. The trustee did not join the debtor in asserting this argument.

**12**

tor is guilty of misconduct. Section 510(c) provides in relevant part that "... after notice and a hearing, the court may (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim ..." 11 U.S.C. § 510 (1982).

## DISCUSSION

### A.

### Subordination of Tax Claims

The IRS relies upon the following language in the legislative history of § 510(c)(1):

> The bill provides that any subordination ordered under this provision must be based on principles of equitable subordination. These principles are defined by case law, and have generally indicated that a claim may normally be subordinated only if its holder is guilty of misconduct. As originally introduced, the bill provided specifically that a tax claim may not be subordinated on equitable grounds. The bill deletes this express exception, but the effect under the amendment should be much the same in most situations since, under the judicial doctrine of equitable subordination, a tax claim would rarely be subordinated.

Sen.Rep. No. 989, 95th Cong., 1st Sess., 74 (1978), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5860.[4]

It is apparent, however, that rather than support the IRS's position, the quoted language is merely a Senate Report statement of intent which forecasts that a tax claim would rarely be subordinated but nonetheless defers the task of defining the doctrine of equitable subordination to the courts. In that regard it is observed that a

previous House Report specifically recognized the "general authority" of the court "to subordinate claims on equitable grounds." H.R.Rep. No. 595, 95th Cong., 1st Sess., 196 (1977), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5963, 6157. Accordingly, the tax penalty here may be subordinated if the prevailing principles of equitable subordination support such a determination.

### B.

### The Doctrine of Equitable Subordination

■ The doctrine of equitable subordination emanates from the general equity powers of the bankruptcy court. In *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the Supreme Court reaffirmed that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." 308 U.S. at 304, 60 S.Ct. at 244. Among its equity powers, the bankruptcy court was endowed with the authority to "subordinat[e] in light of equitable considerations...." *Id.* at 305, 60 S.Ct. at 244. As the Court stated, "[i]n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Id.* at 307–08, 60 S.Ct. at 246, *see also, Taylor v. Standard Gas and Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1938).[5]

The IRS maintains that wrongful conduct by a creditor is the traditional basis for the equitable subordination of that creditor's claim and rejects the debtor's attempt to expand that doctrine. Relying on *In re Ahlswede,* 516 F.2d 784, 787 (9th Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975), the IRS states

---

4. *See also,* 124 Cong.Rec. H 11,113 (daily ed. Sept. 28, 1978); S 17,430 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini), *reprinted in,* 1978 U.S.Code Cong. & Admin. News 6436, 6499, 6505, 6568 ("Since the House Amendment authorizes subordination of claims only under principles of equitable subordination, and thus incorporates principles of existing case law, a tax claim would rarely be subordinated under this provision of the bill.").

5. Congress specifically approved *Pepper v. Litton* and *Taylor v. Standard Gas and Electric Co.* when it enacted § 510(c). *See,* H.R.Rep. No. 595, 95th Cong., 1st Sess., 359 (1977), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5963, 6315 ("This section is intended to codify case law, such as *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), and *Taylor v. Standard Gas and Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1938) ...").

that "while Congress has left with the courts the discretion to develop the concept of equitable subordination this power is not limitless or rudderless. Equitable subordination is an extraordinary remedy only to be used in extreme cases of unfairness."[6] *See also In re Branding Iron Steak House,* 536 F.2d 299 (9th Cir.1976); *In re Mobile Steel Co.,* 563 F.2d 692, 699–700 (5th Cir.1977) ("before exercise of the powers of equitable subordination is appropriate ... [t]he claimant must have engaged in some type of inequitable conduct.").

■ This court is persuaded, however, that wrongful conduct is no longer the exclusive basis for equitable subordination. Recent cases within the Second Circuit and compelling language in the legislative history of § 510(c)(1) support the view that certain claims may be subordinated by virtue of their very nature.

■ Although the Second Circuit Court of Appeals has not specifically addressed equitable subordination in the context of § 510(c)(1), *Matter of Stirling Homex Corp.,* 579 F.2d 206 (2d Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979), supports the conclusion that a tax penalty should be subordinated so that innocent general creditors will not be forced to redress a debtor's wrongdoing. The *Homex* court "consider[ed] the ... narrow question whether it was inequitable ... to subordinate the claims by [defrauded] stockholders to those made by ordinary general creditors." 579 F.2d 212. Relying on *Pepper v. Litton,* the court concluded that the defrauded shareholders' claims should be subordinated:

> Where the debtor corporation is insolvent and is about to undergo complete liquidation, the equities favor the conventional general creditors rather than the allegedly defrauded stockholders. In such circumstances, "[t]he real party against which [the stockholders] are seeking relief is the body of general creditors of

their corporation. Whatever relief may be granted to them in this case will reduce the percentage which the general creditors will ultimately realize upon their claims".

579 F.2d at 213 (citations omitted).[7] *See also, Matter of GAC Corp.,* 681 F.2d 1295, 1301 (11th Cir.1982) ("future wrongful conduct will not be deterred when the punitive damages are paid from the wrongdoer's estate ...").

Bankruptcy courts subordinating claims under § 510(c)(1) have interpreted that subsection in a manner consistent with the *Homex* holding. *See e.g., Matter of Colin,* 44 B.R. 806 (Bankr.S.D.N.Y.1984); *In re Quality Sign Co., Inc.,* 51 B.R. 351 (Bankr.S.D.Ind.1985); and *Matter of Mansfield Tire & Rubber Co.,* 80 B.R. 395 (Bankr.N.D.Ohio 1987); *c.f., Matter of Johns–Manville Corp.,* 68 B.R. 618, 627 (Bankr.S.D.N.Y.1986), *aff'd,* 78 B.R. 407 (S.D.N.Y.1987) (".. it should be observed that arguably under § 510 of the Code, bankruptcy courts have the *statutory* power to subordinate claims for punitive damages"). (emphasis in original).

In *Matter of Colin,* the creditors' committee sought the subordination of a punitive damages claim in a Chapter 11 liquidation. The court subordinated the claim and noted:

> ... punitive damage claims are penalty claims. They are imposed, not to afford redress, but to deter wrongful conduct. If, as in this case, punitive damages are to be paid, not by the alleged wrongdoer, but by his estate, the purpose of the penalty is not served. The effect would be to force innocent creditors sharing in the debtor's assets to pay for his wrongdoing. Such a result is clearly untenable, and patently inequitable.
>
> ...
>
> The clear implication of [§ 510(c)(1)] and its legislative history is that a claim

---

6. United States' Memorandum In Opposition To The Subordination Of The IRS' Tax Penalties, pp. 5–7.

7. Significantly, the Second Circuit Court of Appeals recognized § 510(b) of H.R. 8200, 95th Cong., 1st Sess. (1978) and the virtually identical § 510(b) of S. 2266, 95th Cong., 1st Sess. (1977) (currently § 510(c)(1)) as persuasive even if not authoritative support for its decision.

for punitive damages should not be allowed to share *in pari passu* with other general unsecured creditors for to do so would result in innocent creditors paying for the debtor's alleged misconduct. *Id.* at 810. In *In re Quality Sign Co., supra*, 51 B.R. 351, the court, relying on *Matter of Colin*, subordinated a pre-petition tax penalty stating, "the clear implication ... is that penalty claims should be accorded status inferior to all general non-subordinated unsecured claims." 51 B.R. at 353. In *Mansfield Tire & Rubber Company, supra*, 80 B.R. 395, when subordinating a claim for an excise tax which it found to be a penalty, the court concurred

> with the rationale expressed by the *Colin* court as it pertains to the application of Section 510(c) to penalty claims. The court finds it inequitable to permit the federal government to, effectively, punish innocent creditors of the estate for wrongs inflicted by the now defunct corporations.

80 B.R. at 401–02.

Congress has also recognized that a claim may be subordinated under principles of equitable subordination solely because of the nature of the claim. "To date, under existing law, a claim is generally subordinated only if holder of such claim is guilty of inequitable conduct, *or the claim itself is of a status susceptible to subordination, such as a penalty ...*" 124 Cong.Rec. H 11,095 (daily ed. Sept. 28, 1978); S 17,412 (daily ed. October 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 6436, 6452, 6505, 6521 (emphasis supplied). *See also,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977), *reprinted in,* 1978 U.S. Code Cong. & Admin.News 5963, 6315. ("The court's power is broader than the general doctrine of equitable subordination, and encompasses subordination on any equitable grounds".) [8]

---

**8.** Congress has recognized this rationale elsewhere. When it prescribed a specific distribution scheme for chapter 7 liquidations, Congress stated: "[Section 726(a)(4) ] provides that punitive penalties, including prepetition tax penalties, are subordinated to the payment of all other classes of claims, except claims for interest accruing during the case. In effect, these

penalties are payable out of the estate's assets only if and to the extent that a surplus of assets would otherwise remain at the close of the case for distribution back to the debtor." S.Rep. No. 989, 95th Cong., 2d Sess., 97 (1978), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5883. Thus, Congress intended that the debtor and not his general creditors pay for his wrongdoing.

---

## CONCLUSION

Although earlier decisions did not permit the equitable subordination of claims unless the claiming creditor was guilty of some misconduct, courts now recognize that the subordination of penalty claims is necessary to avoid the inequity of requiring innocent creditors to share the cost of a debtor's misconduct. Here, as noted, the IRS penalty was imposed because of the debtor's failure to file tax returns and pay income taxes. Accordingly, I find that the debtor's First Amended Chapter 13 Plan properly subordinates the IRS penalty, the IRS Objection is overruled, and

IT IS SO ORDERED.