In re STANDARD JOHNSON CO., INC., Debtor.

Bankruptcy No. 183–30241–352.

United States Bankruptcy Court, E.D. New York.

Aug. 30, 1988.

See also 67 B.R. 176.

Richard J. McCord, Glen Cove, N.Y., for debtor.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by William H. Beckerleg, Brooklyn, N.Y., for the I.R.S.

## OPINION

MARVIN A. HOLLAND, Bankruptcy Judge:

The debtor objects to a proof of claim filed by the Internal Revenue Service ("IRS") on the ground that IRS's claim has incorrectly included pre-petition interest and penalties as a priority. The debtor requests that those portions of the claim be reclassified as general unsecured.

## FACTS

On October 7, 1985 the IRS filed amended proof of claim #21 in the amount of $114,502.03, as a priority, for withholding taxes, social security and unemployment insurance contributions. Of the amount claimed, $100,343.75 is referred to in section A of the proof of Claim as secured by a federal tax lien filed pre-petition under the internal revenue laws, inclusive of $20,-880.95 in penalties and $18,053.25 in interest. The balance, classified in section B of the proof of claim, is an unsecured priority claim for taxes due pre-petition amounting to $13,181.86, inclusive of interest of $182.04 and $976.42 in penalties.

The debtor moves to reclassify as non-priority those portions of the unsecured IRS claim which sought pre-petition interest and penalties as a priority.

The IRS failed to appear on the scheduled return date and the relief sought by the debtor was granted by default. After a proposed order was settled upon the IRS, the United States Attorney, on behalf of the IRS, claimed that the IRS had not been properly served and a hearing was held to determine the adequacy of the notice.

As a result, the court, *sua sponte*, noticed a hearing at which the procedural objection of the IRS was bypassed, the court providing both sides sufficient notice and time to address the substantive issues.

## Statement of Issue

To what extent, if any, are interest and penalties relating to tax liabilities entitled to a § 507 priority.

## DISCUSSION

I.  *Post–Petition Taxes*

Post-petition taxes incurred by a trustee or debtor-in-possession, together with any penalties thereon, are afforded the highest priority under § 507:—not because of their status as tax claims, but rather because § 503 includes them within its classification of administrative expenses which § 507(a)(1) affords a first priority. While § 503(b)(1) specifically includes penalties on post-petition taxes with its classification of administrative expenses, it makes no mention of interest.

Since § 503(b) is derived from a similar provision of the Act, § 64(a)(1), 11 U.S.C. § 104, judicial interpretation of that section of the Act is relevant in interpreting the corresponding Code section. *In re Amfesco Industries, Inc.,* 81 B.R. 777, 783 (Bankr.E.D.N.Y.1988). Section 64(a)(1) had failed to incorporate a provision granting administrative priority for interest which had accrued on a post-petition tax which itself was entitled to an administrative priority. Yet, the Supreme Court in *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), held that interest accruing on a post-petition tax during a Chapter 11 arrangement should be afforded priority status under § 64(a)(1). The *Nicholas* court stated:

> The underlying obligation of the debtor-in-possession is incurred as part of a judicial process of rehabilitation of the debtor that the procedures of Chapter XI are designed to facilitate. Interest on a current Chapter XI obligation is therefore different in kind from interest claimed during the arrangement period on a debt incurred before the Chapter XI petition was filed. *Nicholas,* 384 U.S. 678 at 684 [86 S.Ct. at 1680].

The legislative history of section 503 does not indicate expressly or impliedly that Congress intended to overturn *Nicholas. In re Patco Photo Corp.,* 82 B.R. 192, 193 (Bankr.E.D.N.Y.1988). Absent specific congressional directive to the contrary, there exists no compelling reason for a different construction of this particular section of the Code. Were we to hold

otherwise, this court would be effectually "grant[ing]" the debtors an interest-free loan at the expense of both the government and the judicial process", *In re Patco Photo Corp.*, 82 B.R. 192 at 195, providing them with the opportunity to fund a plan of reorganization through unpaid but collected fiduciary taxes, all at the expense of the federal government. Accordingly, we hold that interest accruing on a post-petition tax is entitled to the same priority afforded the underlying tax.

## II. *Pre–Petition Taxes*

■ 11 U.S.C. § 507(a)(7) provides that taxes incurred by a debtor pre-petition are afforded priority status. This section however is bereft of any provision providing for priority status to be accorded the interest thereon. Nor does the legislative history to section 507(a)(7) provide any instructive guidelines.

The debtor cites to *Razorback Ready–Mix Concrete Co. v. United States (In re Razorback Ready–Mix Concrete Co.)*, 45 B.R. 917 (Bankr.E.D.Ark.1984) as its only support for its contention that interest accruing pre-petition, on pre-petition taxes, should be afforded non-priority status. In *Razorback*, the court (Fussell, J.) examined the underlying legislative history of section 507(a)(7) and concluded:

> That it cannot agree with the government's position with regard to whether pre-petition interest is a part of the government's allowed 'claim.' But just as clearly creditors of debtors may have claims and under the Code, those claims may be given different classifications for purposes of distribution and priority status. For example, a creditor may file a claim as secured but, upon subsequent determination, part of that claim may be relegated to an unsecured status. Another example, as the debtor correctly points out, is the penalty taxes claimed herein. The penalty taxes, although part of the defendant's tax claim, do not share priority status with the tax claim. The issue is not, as appears to be the focus of the government's argument, whether the interest is part of the defendant's claim or whether it may be considered within

the definition of 'claim'. Rather the issue is whether that part of the claim for pre-petition interest may necessarily be given priority status because the claim for taxes is so prioritized. § 507 does not provide for priority treatment of pre-petition interest on tax claims. Such a provision, in fact, was deleted. The court is persuaded that the Code does not provide, either expressly or impliedly, priority status for the pre-petition interest claimed by the defendant (just as it does not for pre-petition penalties), but is allowable as a general unsecured claim. *Id.* at 924.

Debtor's counsel in failing to research (or at least disclose to the court) current case law has ignored *In re Stonecipher Distributors, Inc.*, 80 B.R. 949 (Bankr.W.D.Ark. 1987), in which the same judge who presided over *Razorback*, when confronted with the same issue analyzed in *Razorback*, specifically overruled *Razorback*, thereby destroying any precedential value *Razorback* may have had.

The bankruptcy court in *In re Treister*, 52 B.R. 735 (Bankr.S.D.N.Y.1985), also considered the legislative history of 11 U.S.C. § 507 and reached a result different from *Razorback*.

The *Treister* court concluded that interest on pre-petition taxes is entitled to priority status by analyzing the inter-relationship between 11 U.S.C. § 507(a)(7) and 11 U.S.C. § 101(4). 11 U.S.C. § 507(a)(7) provides priority status to certain "allowed secured claims of government units." 11 U.S.C. § 101(4) defines a claim as a "right to payment." Legislative history confirms that Congress intended the broadest possible definition of "claim" in bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5808. In fact, "[t]he Supreme Court has acknowledged this Congressional intention by observing that it is apparent that Congress desired a broad definition of "claim" and knew how to limit the application ... when

it desired to do so." *In re Amfesco Industries, Inc.*, 81 B.R. 777 at 783 (quoting, *Ohio v. Kovacs*, 469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985)). Encompassed within the broad definition of claim is a right to payment, which encompasses interest due on pre-petition taxes.

Other courts faced with the issue outlined in *Treister* have reached the same results. *See, e.g., United States v. Friendship College, Inc.*, 737 F.2d 430, 433 (4th Cir.1984); *In re Barbier*, 84 B.R. 190, 191 (D.Nev.1988); *In re Patco Photo Corp.*, 82 B.R. 192 at 196; *In re Keller & Katkowsky, P.C.*, 55 B.R. 155, 156 (Bankr.E.D. Mich.1985).

The debtor also seeks to reclassify, as general unsecured, those pre-petition penalties assessed pursuant to 26 U.S.C. § 6651. 11 U.S.C. § 507(a)(7)(G) provides that in order for a penalty to be afforded priority status it must fulfill two elements:

1) It must be related to the priority claims itself; and

2) It must be "in compensation for actual pecuniary loss."

No evidence has been offered to contradict what appears to be fact:—that since interest is awarded the government to compensate it for the loss of use of its money, the penalties assessed are punitive in nature, bearing no relationship to any actual pecuniary loss, and accordingly are not entitled to priority status. *In re Patco Photo Corp.*, 82 B.R. 192 at 197.

To the extent that the penalty is punitive in nature, subordination of that part of the claim may also be warranted. Allowing this portion of the claim to share *pari passu* status with a general unsecured claim may effectually force "innocent creditors sharing in the debtor's assets to pay for ... [the debtor's] wrongdoing." *In re Colin*, 44 B.R. 806, 810 (Bankr.S.D.N.Y. 1984).

In *In re Stirling Homex Corp.*, 579 F.2d 206, 213–14 (2d Cir.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979), the court was confronted with the issue of whether it would be inequitable to subordinate the claims of defrauded stockholders to those of the corporation's ordinary creditors although those defrauded stockholders did not participate in any fraudulent activity.

The court, relying on its general equitable powers, *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), subordinated the claims of those defrauded shareholders, reasoning that the real party in interest from whom they should seek redress is the party committing the fraud, not the general unsecured creditors. Analogously, treating IRS with regard to penalties in *pari passu* with the general unsecured creditor body would reduce prorata the dividened to be awarded such general unsecured creditors, while maintaining no deterrent effect upon the wrongdoerdebtor. The court in *In re Merwede*, 84 B.R. 11, 14 (Bankr.D.Conn.1988) realized this concern and held that "the subordination of penalty claims is necessary to avoid the inequity of requiring innocent creditors to share the cost of a debtor's misconduct." *See also In re Cartridge Television, Inc.*, 535 F.2d 1388 (2d Cir.1976) (court disallowed stockholders, whose claims were based solely on a fraud perpetrated by the issuer of the stock, to further deplete the already diminutive pool of assets available to the debtor's general unsecured creditors).

Moreover, the penalty assessed by the IRS might be subject to avoidance by the debtor. Since the government's lien constitutes a transfer under 11 U.S.C. § 101(50), to the extent that the debtor did not receive reasonably equivalent value in exchange for that portion of the obligation representing penalties wholly unrelated to any actual pecuniary loss suffered by the government, it might be avoidable under § 548(a)(2)[1] or other applicable state law.

---

1. Section 548(a)(2) provides that in addition to the trustee proving a lack of reasonably equivalent value in exchange for the transfer as of the transaction date, the trustee must prove either that the debtor was insolvent or rendered insolvent as a result of the transaction, 11 U.S.C. § 548(a)(2)(B)(i), engaged in or was about to engage in a business or transaction for which it would be left with unreasonably small capital, 11 U.S.C. § 548(a)(2)(B)(ii), or intended to incur

And to the extent that the lien was perfected within the 90 days prior to the date the petition was filed, it might be avoidable under § 547. However, in view of the debtor's failure to raise these issues, we need not address them at the present time.

## CONCLUSIONS OF LAW

1) The debtor's application to reclassify post-petition administrative tax claims, including interest and penalties, to general unsecured claims is denied.

2) The debtor's application to reclassify interest on pre-petition taxes to general unsecured claims is denied.

3) The debtor's application to reclassify penalties on pre-petition taxes as a general unsecured claim is granted.

SETTLE ORDER.

or believed that the debtor would incur debts beyond its ability to pay as they matured, 11 U.S.C. § 548(a)(2)(B)(iii).