**In the Matter of F.D. ROBERTS SECURITIES, INC., a Corporation of the State of New Jersey, Debtor.**

**Bankruptcy No. 89–01657.**

United States Bankruptcy Court,
D. New Jersey.

June 15, 1990.

Ravin, Greenberg & Zackin, Jack Birnberg & Associates by Larry Lesnik, Roseland, N.J., for trustee.

Robert J. Del Tufo, Atty. Gen. of N.J., Roseland, N.J. by John T. Ambrosio, Jersey City, N.J.

## OPINION

DANIEL J. MOORE, Bankruptcy Judge.

This matter comes before the Court on the motion of Jack Birnberg & Associates, the bankruptcy trustee for F.D. Roberts Securities, Inc., (the "Trustee") seeking an order enjoining the Attorney General of the State of New Jersey (the "Attorney General") from continuing a civil action pending in the New Jersey Superior Court, Chancery Division, Essex County, (the "State Court Action") as it relates to defendant F.D. Roberts Securities, Inc. (the "Debt-

or"). In the State Court Action, the Attorney General alleges that (1) the Debtor through its officers, directors, supervisors and managers employed individuals to sell and purchase securities who were not registered with the Bureau of Securities, (2) the Debtor through its officers, directors, supervisors or managers committed fraud in connection with the offer or sale of securities, and (3) the Debtor constituted an enterprise within the meaning of N.J.S.A. 2C:41–1c out of which one or more of the other named defendants engaged in acts which constitute a pattern of racketeering activity as defined by N.J.S.A. 2C:41–1d.

The Trustee asserts that the State Court Action as it relates to the Debtor is subject to the automatic stay provisions of 11 U.S.C. § 362(a) and is not exempt from the automatic stay pursuant to § 362(b)(4) as a proceeding brought "by a governmental unit to enforce such governmental unit's police or regulatory power." Alternatively, the Trustee claims that pursuant to 11 U.S.C. § 105 the Debtor is entitled to an order (1) enjoining the Attorney General from proceeding against the Debtor, (2) relieving the Trustee's counsel from defending the Debtor in the State Court Action, or (3) subordinating any monetary claim the Attorney General may have to the claims of the Debtor's general unsecured creditors.

The Attorney General on the other hand asserts that the State Court Action is exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) and (5) as an exercise of the State's police power. The Attorney General further asserts that the relief requested by the Trustee pursuant to 11 U.S.C. § 105 is not warranted because the Trustee has failed to establish the requisite imminent danger of irreparable harm to the assets of the estate.

The Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 1334(b), § 157(b)(2) and the Standing Order of Reference of the District Court for the District of New Jersey dated July 23, 1984. The following constitutes the Court's Findings of Fact and Conclusions of Law.

## FACTS

The Debtor is a New Jersey corporation with its principal place of business in Paramus, Bergen County, New Jersey. Prior to February, 1989, the Debtor's operations consisted of investment banking and stock brokerage. In or about February, 1989, the Debtor ceased doing business and closed its offices. On March 6, 1989, the Debtor filed a voluntary petition under the liquidating provisions of Chapter 7 of the United States Bankruptcy Code. On March 9, 1989, Jack Birnberg & Associates was appointed Trustee to oversee the orderly liquidation of the Debtor. On March 13, 1989, the Trustee retained the Law Firm of Ravin, Greenberg & Zackin as counsel for the Trustee. The Debtor currently has no employees, no operations and is in the process of liquidating all of its assets.

On January 9, 1990, the Attorney General, individually and on behalf of the Chief of the New Jersey Bureau of Securities, commenced the State Court Action by filing a seventy five page, six count complaint in the New Jersey Superior Court, Chancery Division, Essex County.

Subsequent to commencing the State Court Action, the Attorney General sought temporary injunctive and ancillary relief from the Superior Court against all the defendants, including an order (1) temporarily enjoining defendants from violating the law and from engaging in the securities business, (2) appointing a receiver, (3) freezing the defendants assets, and (4) providing for an accounting. Hearings on the Attorney General's application for temporary relief were held on January 16 and 22, 1990, at which time the Trustee asserted that the action as against the Debtor was stayed pursuant to 11 U.S.C. § 362. At the conclusion of these hearings, Superior Court Judge Murray G. Simon granted the Attorney General's application for temporary injunctive relief as to all parties except the Debtor. Judge Simon held that the temporary injunction entered as against the Debtor would be imposed only if the Bankruptcy Court determined that

the action was exempt from the automatic stay. Judge Simon also granted the motion to stay the entire state court proceeding, including all discovery until April 2, 1990.

On January 26, 1990, the Trustee filed the motion *sub judice*.

## LEGAL DISCUSSION

The automatic stay under § 362 of the Bankruptcy Code

"is one of the fundamental debtor protections provided by the bankruptcy laws." H.R. No. 595, 95th Cong. 1st. Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6296. Its essential purpose is twofold: (1) to protect creditors and thereby promote the bankruptcy goal of equal treatment, *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986); and (2) to give the debtor a breathing spell. H.R.Rep. No. 595, at 340, 1978 U.S.Code Cong. & Admin.News 6296.

> [The automatic stay] stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Id.;* S.Rep. No. 989, 95th Cong; 2d Sess. 50 (1978), 1978 U.S.Code Cong. & Admin. News 5838; *see generally 2 Collier on Bankruptcy* § 362.04 at 362–31 (L. King ed. 1988).

*H & H Beverage Distributors v. Dept. of Revenue of P.A.*, 850 F.2d 165, 166 (3rd Cir.1988).

Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as a stay to all entities of the following conduct:

1. the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

2. the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

3. any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

4. any act to create, perfect, or enforce any lien against property of the estate;

5. any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

6. any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

7. the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

8. the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

However, Congress has limited the scope of the automatic stay in 11 U.S.C. § 362(b) by carving out a number of exemptions. Section 362(b) provides in relevant part that:

The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 USC 78eee(a)(3)), does not operate as a stay—

\*      \*      \*      \*      \*      \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

The Third Circuit in *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3rd Cir.1984) set forth the proper manner for construing §§ 362(b)(4) and (5) as follows:

> Given the general rule that pre-emption is not favored, and the fact that, in restoring power to the States, Congress intentionally used such a broad term as police and regulatory power, we find that the exception to the automatic stay provision contained in subsections 362(b)(4)–(5) should itself be construed broadly, and no unnatural efforts be made to limit its scope. The police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the people; its abrogation is therefore a serious matter.

*Id.* at 273.

The legislative history to § 362(b)(4) and (5) consists of Senate and House committee reports which use identical language in describing the intended effect of the police and regulatory exemption. The reports provide that:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stay violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
>
> Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of Debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

S.Rep. No. 989 at 52 1978 U.S.Code Cong. & Admin.News at 5838; H.R.Rep. No. 595, at 343 1978 U.S.Code Cong. & Admin.News at 6299.

The relief sought by the Attorney General in the State Court Action can be broken down into four categories: (1) declaratory relief, (2) the permanent closure of the Debtor, (3) the appointment of a receiver, and (4) monetary relief. The Court will examine each separately. *See In re Elsinore Shore Associates*, 66 B.R. 723, 737 (Bankr.D.N.J.1986).

## DECLARATORY RELIEF

■ The Attorney General in the State Court complaint seeks an order finding that the Debtor (1) engaged in acts of practices in violation of N.J.S.A. 49:3–56 and N.J.S.A. 49:3–52, and (2) engaged in acts and practices in violation of the New Jersey Racketeering Law, N.J.S.A. 2C:41–1 *et seq.*, including N.J.S.A. 2C:41–2d. The State's labelling the actions of a corporation as being in violation of the law and thereby sending a message to the other members of the securities industry that such conduct will not be tolerated is undoubtedly designed to protect the welfare of the citizens of New Jersey and is not inconsistent with the Bankruptcy Court's administration of the estate. Accordingly, the Attorney General is not stayed by § 362 from pursuing this declaratory relief.

## PERMANENT CLOSURE OF THE DEBTOR

■ The Attorney General seeks an order which would have the effect of guaranteeing the permanent closure of the Debtor's operations. At first blush, it appears that any attempt to permanently close the Debtor would be unnecessary because the Debtor is not only liquidating all its assets under Chapter 7 of the Bankruptcy Code but also, pursuant to §§ 101(48) and 109(d), ineligible for reorganization under Chapter 11.

However, subsequent to the liquidation of all the assets of a corporation under Chapter 7, the corporate entity remains intact. "[I]f a dissolution of such corpora-

tion ... is desired by the parties, it must be effectuated under state law since the Code does not provide for dissolution of corporations ..." 4 *Collier on Bankruptcy, 15th Ed* para § 727.01, p. 727–8 (West 1989). Therefore, subsequent to the liquidation of all of its assets, it is possible that the Debtor could acquire new capital and resume operations in the securities industry.

It is the opinion of the Court that the continuation of the State of New Jersey's action to permanently close the Debtor which has allegedly violated the New Jersey Uniform Securities Law of 1967 and the New Jersey Racketeering Law to the extent it does not interfere with the bankrupt estate is not stayed by 11 U.S.C. § 362. Accordingly, the State of New Jersey may proceed to obtain the following relief: (1) permanently enjoining the Debtor from continuing to engage in any acts or practices in violation of the New Jersey Uniform Securities Law of 1967, N.J.S.A. 49:3–47 *et seq.;* (2) permanently enjoining the issuance, offer, sale, purchase, promotion, negotiation, advertisement or distribution from or within the State of New Jersey of any securities by the Debtor; (3) an order prohibiting the Debtor from engaging in any direct or indirect activity, in any capacity whatsoever, relating to the offer, purchase or sale of securities from, within or to the State of New Jersey pursuant to N.J.S.A. 2C:41–4(a)(2) and (5); (4) an order directing the dissolution of the Debtor; (5) an order directing the revocation of the Debtor's charter pursuant to N.J.S.A. 14A:12–6 and/or N.J.S.A. 2C:41–4(a)(4); and (6) an order directing the Debtor to cease and desist from having any direct ownership, management, or supervisory interest in or control of any Broker–Dealer registered with the Bureau of Securities pursuant to N.J.S.A. 2C:41–4(a)(6).

■ However, the Attorney General also seeks an order directing each of the individual defendants to divest himself of any interest, direct or indirect, that he has in the Debtor pursuant to N.J.S.A. 2C:41–4(a)(1).

[C]ourts have determined that the term "police or regulatory power" refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court.

*In re William Tell II, Inc.,* 38 B.R. 327, 329 (N.D.Ill.1983) *quoting State of Missouri v. United States Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir.1981) *cert. denied* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). To the extent a state cause of action might result in an order requiring the Debtor to turn over money or property, it is stayed pursuant to § 362. *Matter of Cannon,* 30 B.R. 565, 567 (Bankr.E.D.Mos.1983). Therefore, to the extent pursuit of an order directing divestment from the Debtor conflicts with the administration of the estate by the bankruptcy court or might result in turn over of money or property by the Debtor, it is stayed.

### RECEIVERSHIP

■ The Attorney General seeks the appointment of a receiver to serve without bond to exercise all the powers enumerated in N.J.S.A. 49:3–69(c) and (d) and all additional statutory powers and duties conferred upon receivers so far as those provisions are applicable. The powers provided for in N.J.S.A. 49:3–69(c) and (d) are as follows:

(c) ...

to sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description derived by means of any practice declared to be illegal and prohibited by this law, including property with which such property has been mingled, if it cannot be identified in kind because of such commingling, and to sell, convey and assign the same and hold and dispose of the proceeds thereof under the direction of the court for the equal benefit of all who establish an interest therein by reason of the use and employment by the defendant of any practices herein declared to

be illegal and prohibited. The receiver may retain an attorney with the consent of the Attorney General and the court. The court shall have jurisdiction of all questions arising in such proceedings and may make such orders and judgments therein as justice shall require.

\* \* \* \* \* \*

(d) ...

Upon the appointment of the receiver, all the real and personal property of the corporation, partnership, company, association or trust, and its franchises, rights, privileges and effects shall forthwith vest in him and the corporation, partnership, company, association or trust shall be divested of the title thereto.

The receiver shall settle the estate and distribute the assets, and have all the powers and duties conferred upon receivers by the provisions of Title 14, Corporations, General, so far as the provisions thereof are applicable.

■ Pursuant to 28 U.S.C. § 1334(d), the filing of a bankruptcy petition confers sole jurisdiction over the debtor's property in the federal courts. *In re Liss*, 59 B.R. 556, 560–561 (Bankr.N.D.Ill.1986). Federal bankruptcy law prohibits the state from asserting jurisdiction over property of the estate which is now under the authority of the Bankruptcy Court. *See Id.* at 560. To the extent the proposed receiver would exercise control over the property of the estate the appointment is stayed by § 362. "Such receivership would therefore 'directly conflict with the control of the *res* or property by the bankruptcy court.'" *Id.* quoting *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 555 (7th Cir. 1985).

■ However, the Bankruptcy Court is not to be used as a haven for wrongdoers whose acts would be subject to the scrutiny of a state court receiver but not a bankruptcy trustee. Accordingly, to the extent the proposed receiver is appointed to pursue causes of action not available to the Trustee, and which are consistent with the Bankruptcy Court's administration of the estate and in accordance with the provisions of the Bankruptcy Code, the appointment of the receiver is not stayed.

■ In addition, in order to promote a thorough and expedient resolution of these matters, the Court invokes its equitable power pursuant to § 105(a) and orders that the Trustee will have the exclusive authority to pursue its statutorily prescribed causes of action on behalf of the estate until May 31, 1990. Subsequent thereto, the state court receiver may assert any cause of action pursuant to N.J.S.A. 49:3–69(c), whether or not available to the Trustee, that is consistent with the Bankruptcy Court's administration of the estate and in accordance with the provisions of the Bankruptcy Code.

■ Furthermore, the books and records currently in the custody and control of the Trustee should be made available to the Attorney General in accordance with any reasonable request by the Attorney General to review and/or copy same. To the extent cooperation of the Trustee is required, the Trustee is ordered to cooperate with the Attorney General and the receiver if appointed in the State Court Action.

### MONETARY RELIEF

■ The Attorney General seeks monetary relief in a number of forms. First, an order (1) directing disgorgement of the Debtor's property acquired in connection with acts and practices alleged and found to be in violation of the New Jersey Uniform Securities Law and/or (2) directing the restitution of monies or property unlawfully obtained or retained in violation of the New Jersey Racketeering Law. As previously stated to the extent the enforcement of a state law directly conflicts with the bankruptcy court's control of the property of the estate, *In re William Tell II, Inc.*, 38 B.R. at 329 or to the extent a state cause of action might result in an order directing the Debtor to surrender money or property, *Matter of Cannon*, 30 B.R. at 567, it is stayed by 11 U.S.C. § 362. If the Attorney General was allowed to proceed and ultimately obtained an order directing

disgorgement and/or restitution it would conflict with this Court's control of the property of the estate and the result would be the surrender of money or property by the Debtor to the detriment of the general unsecured creditors of the estate. It is the opinion of the Court that an action for an order of disgorgment or restitution is tantamount to the enforcement of a money judgment. Pursuant to the clear language of § 362(b)(5), such an action is stayed. The Attorney General is therefore stayed by § 362 from pursuing a cause of action for disgorgement or restitution.

■ The Attorney General also seeks the imposition of statutory civil penalties against the Debtor pursuant to N.J.S.A. 49:3–70(b) for each of the acts and practices alleged and found to be in violation of the New Jersey Uniform Securities Law, and the assessment of civil monetary penalties against the Debtor pursuant to N.J.S.A. 2C:41–4(a)(8) in the amount of three times the gain the Debtor acquired through violations of the Racketeering Law. Pursuant to the clear language of § 362(b)(5), the Attorney General may pursue a monetary claim against the Debtor if in the interest of the public welfare, but is limited to obtaining a judgment fixing the amount of the claim. Permitting the Attorney General to enforce a monetary judgment would give the state an unfair advantage over other creditors and would effectively subvert the scheme of priorities set forth in § 507. 2 *Collier on Bankruptcy, 15th Ed.*, para 362.05[5] at 362–47 (West 1989).

■ Although the Attorney General's pursuit of a money judgment against the Debtor is not stayed by the Debtor's filing for bankruptcy, any acts taken by the Attorney General to obtain said judgment will be of little utility. Pursuant to Bankruptcy Rule 3002(c), in order for the Attorney General to have an allowable claim against the Debtor's estate, the Attorney General must have filed a proof of claim within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Bankruptcy Code. The time for filing claims fixed by rule 3002(c) constitutes a statute of limitations barring late filings.

8 *Collier on Bankruptcy, 15th Ed.*, at 3002–14 and 15. Courts have uniformly held that no extension of time fixed by Rule 3002(c) may be granted after the time has passed. The Court has no equitable power to extend the time fixed by Rule 3002(c). *Id.* at 3002–15.

The Debtor filed a voluntary Chapter 7 petition on March 6, 1989. The meeting of creditors pursuant to § 341(a) was held on May 5, 1989. Pursuant to Rule 3002(c), creditors of the Debtor are barred from filing proof of claims subsequent to August 3, 1989. The proof of claims file in the office of the Clerk of the Bankruptcy Court shows that as of February 13, 1990, the date of the hearing on the Trustee's motion, the Attorney General had not filed a proof of claim for penalties sought in the State Court Action for the Debtor's alleged violations of the New Jersey Uniform Securities Law and the Racketeering Law. Based on the foregoing, a proof of claim filed by the Attorney General based on Debtor's alleged misconduct would be untimely and would be paid only if the claims described in § 726(a)(1) and (2) are paid in full. 11 U.S.C. § 726(a)(3) *see infra.*

■ Additionally there is support for the further subordination of the claims of the Attorney General which represent penalties in 11 U.S.C. § 726(a)(4) and § 510(c). Section 726(a)(4) expressly provides for the subordination of any allowed claim for fine or penalty to the fourth position, behind, among others, general unsecured creditors. Section 726(a) provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

Also, Section 510(c)(1) empowers the Court to, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest...."

As previously stated, the Debtor is in the process of liquidating all its assets for the benefit of its creditors under Chapter 7 of the Bankruptcy Code. Thus, " '[w]hatever relief may be granted to [the State on its penalty claims] will reduce the percentage which the general creditors will ultimately realize on their claims.' " *See In re Merwede*, 84 B.R. 11, 13 (Bankr.D.Conn.1988) *quoting, Matter of Stirling Homes Corp.*, 579 F.2d 206, 213 (2d Cir.1978) *cert denied* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979).

A number of courts have addressed the treatment of penalty claims against a debtor and have come to the conclusion that equitable subordination of penalty claims is proper. In *Matter of Mansfield Tire & Rubber Co.*, 80 B.R. 395 (Bankr.N.D.Ohio 1987), after determining the claim held by the Internal Revenue Service ("IRS") against the debtor was a penalty rather than a tax, the Court addressed whether the IRS's penalty claim should be equitably subordinated pursuant to § 510(c) to the claims of the general unsecured creditors in a Chapter 11 plan of liquidation. The Court held:

The Court finds it inequitable to permit the federal government to, effectively, punish innocent creditors of the estate for wrongs inflicted by the now defunct corporations. Accordingly, the Court will subordinate the claim of the United States Government to the general unsecured creditors.

*Matter of Mansfield Tire & Rubber Co.*, 80 B.R. at 402.

In *In re Merwede*, 84 B.R. 11 (Bankr.D. Conn.1988), the Court addressed the issue of whether the tax penalty claims held by the IRS against the debtor were subject to equitable subordination in the debtor's Chapter 13 plan. The Court held that:

[a]lthough earlier decisions did not permit the equitable subordination of claims unless the claiming creditor was guilty of some misconduct, courts now recognize that the subordination of penalty claims is necessary to avoid the inequity of requiring innocent creditors to share the cost of a debtor's misconduct.

*Id.* at 14.

In *Matter of Colin*, 44 B.R. 806 (Bankr.S. D.N.Y.1984) the Court was confronted with the issue of what is the proper treatment of a prepetition punitive damage claim held against the Debtor. When addressing subordination under § 510(c), the Court held that:

[p]unitive damages claims are penalty claims. They are imposed, not to afford redress, but to deter future wrongful conduct. *Frank Irey, Jr., Inc. v. Occupational Safety and Health Review Comm'n*, 519 F.2d 1200 (3d Cir.1975) *aff'd* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977); *Collins v. Brown*, 268 F.Supp. 198 (D.D.C.1967); *Sullivan v. Associated Billposters & Distributors*, 6 F.2d 1000 (2d Cir.1925). If as in

this case, punitive damages are to be paid, not by the alleged wrongdoer, but by his estate, the purpose of the penalty is not served. The effect would be to force innocent creditors sharing in the debtor's assets to pay for his wrongdoing. *Matter of GAC Corporation,* 681 F.2d 1295, 1301 (11th Cir.1982). Such a result is clearly untenable, and patently inequitable.

In interpreting this provision, "our lodestar must be the statute's fundamental purpose." *United States v. Holroyd* [732 F.2d 1122] at p. 1125 [ (2nd Cir. 1984) ], citing *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1087 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). The clear implication of the statute and its legislative history is that a claim for punitive damages should not be allowed to share *in pari passu* with other general unsecured creditors for to do so would result in innocent creditors paying for the debtor's alleged misconduct.

*Id.* at 810.

This Court concurs with the foregoing courts. Accordingly, any judgment the State of New Jersey may obtain pursuant to its penalty claims would be subordinated to the claims of the general unsecured creditors pursuant to § 726(a)(4) and/or § 510(c).

### EQUITABLE RELIEF

It is well accepted that the Bankruptcy Court is a court of equity. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Pursuant to § 105(a), "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." The Trustee asserts that the Debtor is entitled to equitable relief. First, an order enjoining the Attorney General from proceeding against the Debtor. It is the opinion of the Court that the facts as set forth above do not warrant such an order.

■ Second, an order relieving the Trustee's counsel from defending the Debtor in the State Court Action. In light of the foregoing holdings of this Court, it is

clear that the Attorney General's pursuit of those claims in the State Court Action not stayed by § 362 will have no effect on the Debtor's estate. However, requiring the attorney for the Trustee to actively participate in the State Court Action would significantly deplete the assets of the estate. Accordingly, the attorney for the Trustee will not be required to defend the interests of the Debtor in the State Court Action.

■ Lastly, the Trustee seeks an order subordinating any claim of the Attorney General to the claims of the general unsecured creditors. The only claims the Attorney General is not stayed from pursuing would be subject to subordination pursuant to 11 U.S.C. § 726(a)(3), (4) and § 510(c). However, as the Attorney General has yet to file a claim the order sought by the Trustee is not required.

### CONCLUSION

Based on the foregoing, the Trustee's motion for an order enjoining the Attorney General from continuing the State Court Action as it relates to the Debtor is granted in part and denied in part.

A formal order of the Court will be entered in accordance with this opinion and the bench order issued at the February 13, 1990 hearing.