United States Court of Appeals
Fifth Circuit

**F I L E D**

October 14, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 04-50080

———————

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

GREAT WHITE MARINE & RECREATION, INC; ET AL,

Defendants

GREAT WHITE MARINE & RECREATION, INC,

Defendant-Appellee

versus

AUGUSTINE FUND, LP,

Appellant

versus

CLARK B. WILL,

Appellee

Appeals from the United States District Court
For the Western District of Texas

Before REAVLEY, JONES, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This is an appeal from a distribution order of funds obtained in a civil action brought by the Securities and Exchange Commission ("SEC" or "Commission") against Great White Marine and Recreation, Inc. ("Great White") and its president and chief executive officer, Alvis Colin Smith, Jr. The district court abstained from and dismissed Great White's bankruptcy pursuant to 11 U.S.C. § 305(a), and distributed the funds in equity. Augustine Fund, L.P. ("Augustine"))) a creditor who would receive nothing under the distribution)) appeals, claiming that the funds were part of the bankruptcy estate and that the district court erred by placing equity holders before creditors.

I

In July of 1999, the SEC brought an action against Great White and Smith for fraudulent distribution of unregistered securities in the United States District Court for the Western District of Texas. The SEC sought injunctive relief, disgorgement, prejudgment interest and civil penalties. On August 25, 2000, the district court entered an order staying all claims against Great White. The district court appointed an agent to collect, liquidate and disburse assets pursuant to a future order or judgment for disgorgement. This order specifically precluded anyone from initiating bankruptcy proceedings without the court's permission. The court appointed Clark Will as the agent ("Agent"). In June of 2001, the SEC, Smith and Great White settled. Smith consented to pay $3 million and turn over various property to the Agent to establish a Disgorgement Estate.

On August 15, 2001, Augustine filed an involuntary bankruptcy proceeding against Great White in the Bankruptcy Court of the Northern District of Illinois. Augustine asserted a claim for over $1 million, based on an April 20, 1999 note. The Agent moved to transfer the venue to the district

2

court in Waco. The Illinois bankruptcy court entered an order of relief under Chapter 7, appointed a trustee, and deferred a ruling on the transfer of venue. The district court in this case issued an order for Augustine to show cause why it should not be held in contempt for violating the stay. In November of 2001, the district court found that Augustine had violated the stay order and ordered it to file an agreed order in the Illinois bankruptcy court to transfer the proceeding to the district court in Waco. In its December 2001 Order Enforcing the Stay, the district court wrote that it "is genuinely dissatisfied that [Augustine has] not effectuated the transfer of the bankruptcy case to this court." After the transfer to Waco, the district court superceded its "Findings of Fact, Conclusions of Law and the 'so ordered' provisions" of the November and December orders.

The Commission and Agent filed a motion asking the Waco district court to abstain pursuant to 11 U.S.C. § 305(a). The district court granted the motion, abstaining from and dismissing the bankruptcy proceeding. Augustine thus filed its claim with the Agent. Subsequently, the district court issued a Memorandum Opinion and Order adopting the Agent's recommendation with regard to payment of claims. The Agent recommended equitable subordination of Augustine's claim, providing distribution to Great White's defrauded investors at $.08 per share. Augustine would receive nothing. The Agent wrote, "[w]ith regard to Augustine Fund, the Court is well aware of its chicanery in this matter. The actions and activities of Augustine in filing an involuntary bankruptcy, and seeking to appropriate the entire Disgorgement Estate, to the exclusion of all other claimants, mitigates equitably against them." The district court agreed, writing, "[i]n knowing and willful contravention of the Court's order, Augustine filed its bankruptcy in Chicago without seeking leave of the Court." The district court added, "[n]ow although more than $100,000 of the Estate's money was spent defending the improperly filed bankruptcy, Augustine still seeks more money from the Estate to such an extent

3

that no shareholder would receive any compensation."

Augustine appeals the Distribution Order. There are two issues on appeal: (1) whether the funds of the Disgorgement Estate belong to the Bankruptcy Estate; and (2) whether the district court erred by disbursing assets to equity holders before creditors.

II

Augustine argues that the funds of the Disgorgement Estate belong to the bankruptcy estate because Smith misappropriated funds from Great White. This argument fails. In its abstention order, the district court dismissed with prejudice the bankruptcy proceeding. Therefore, there is no bankruptcy estate. *See In re Herberman*, 122 B.R. 273, 278 (Bankr. W.D. Tex. 1990) ("An estate is a separate legal identity, created on (and by) the filing of a bankruptcy petition, and continuing until confirmation, conversion, or dismissal of the case."). Without a bankruptcy estate, there can be no property of a bankruptcy estate. *See* 11 U.S.C. § 349(b)(3) (a dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title").

Augustine cites *In re F.D. Roberts Securities, Inc.* for the proposition that an order directing disgorgement "would conflict with [the bankruptcy court's] control of the property of the estate and the result would be the surrender of money or property by the Debtor to the detriment of the general unsecured creditors of the estate." 115 B.R. 485, 492-93 (Bankr. D. N.J. 1990). Here, the district court abstained from and dismissed the bankruptcy action. Therefore, there is no concern of interference with the bankruptcy court's control over the property of the estate, and *In re F.D. Roberts Securities, Inc.* is inapplicable. Similarly, Augustine cites *Bilzerian v. SEC (In re Bilzerian)*, for the proposition that the "payment of any disgorgement award will be subject to the applicable provisions

4

of the Bankruptcy Code and the control of [the bankruptcy] court." 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992). In *Bilzerian*, the court interpreted the impact of 11 U.S.C. § 362(b)(4), an automatic stay provision that precludes payment of disgorgement awards *in bankruptcy proceedings*. Since the Distribution Award is not governed by the Bankruptcy Code, the automatic stay provision does not apply.

III

Augustine contends that even if the funds were not property of the bankruptcy estate, the district court erred by granting priority to equity holders over creditors in its distribution. This court reviews equitable distributions for abuse of discretion. *See SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 332 (5th Cir. 2001) ("the district court . . . was afforded the discretion to determine the most equitable remedy . . . . We will not disturb a district court's permissible exercise of discretion on appeal."). The district court has broad powers and wide discretion in equitable distributions. *See, e.g., SEC v. Fischbach,* 133 F.3d 170, 175 ("The crafting of a remedy for violations of the 1934 Act lies within the district court's broad equitable discretion."); *SEC v. Safety Fin. Serv., Inc*., 674 F.2d 368, 372-73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)) ("It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.").

Augustine argues that the district court erred by not distributing the funds according to 11 U.S.C. § 510(b), which subordinates claims for violations of securities laws to claims of creditors. This argument is meritless. The statute itself notes its limited reach: "[f]or the purpose of distribution *under this title* . . ." 11 U.S.C. § 510(b) (emphasis added). The district court did not distribute assets under the Bankruptcy Code; therefore, the priorities mandated by the bankruptcy code are

5

inapplicable.[1]

The district court found that Augustine's conduct was sufficiently egregious to equitably subordinate its claims. In its Abstention Memorandum and Order, the district court wrote

> It has appeared from the beginning that the involuntary bankruptcy was asserted late in the process and long after the commencement of the Civil Action for the sole purpose of depriving the defrauded victims of their rightful restitution by giving an enormous percentage of the funds collected by the Agent to the creditors.

In adopting the Agent's recommendations with regard to the payment of claims, the district court wrote, "[i]n knowing and willful contravention of the Court's order, Augustine filed its bankruptcy in Chicago without seeking leave of the Court." The district court added, "[n]ow although more than $100,000 of the Estate's money was spent defending the improperly filed bankruptcy, Augustine still seeks more money from the Estate to such an extent that no shareholder would receive any compensation."

Augustine claims that these findings are clearly erroneous and that the district court thus abused its discretion in its equitable distribution of the Disgorgement Estate. We disagree. Augustine's general counsel conceded that it was aware of the SEC's action before it sought Great White's bankruptcy in August of 2001. In addition, the Agent had a conversation with Augustine's accountant before August of 2001, in which he explained that there were generally stay orders in these cases. The docket states, "Ordered that all claims against Great White Marine & Recreation, Inc. be stayed until further order of the Court, and that such other claims may only be asserted in this action." There were no further orders releasing the stay. Thus, the district court's findings are not clearly

---

[1] Had the district court utilized the Bankruptcy Code, it may have still been able to subordinate Augustine's claims under 11 U.S.C. § 510(c)(1) which permits courts to, "under principles of equitable subordination, subordinate for purposes of distribution . . . all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c)(1).

erroneous, and it was within the district court's discretion to equitably subordinate Augustine's claims.

IV

Augustine failed to show that the district court abused its discretion in its equitable distribution of the Disgorgement Estate. Accordingly, the district court's order is AFFIRMED.

EDITH H. JONES, Circuit Judge, dissenting:

With due respect, I dissent from Part III of the majority opinion, which upholds the district court's decision to "equitably subordinate" Augustine's claim as a creditor to those of Great White's shareholders. In my view, the district court's findings justifying subordination are contradictory of earlier proceedings in the case and cannot be upheld. I would vacate and remand.

As the majority notes, two district court findings are key to its punitive ruling: that Augustine "knowingly" and "willfully" violated the court's stay order when it commenced an involuntary bankruptcy against Great White, and that Augustine's action wasted a lot of estate funds used to defend the "improperly filed bankruptcy."

The majority opinion, in my view, overlooks significant details concerning the status of the record in this case. First, on June 19, 2001, final judgments were entered against the defendants. According to the district court's docket sheet, the case was closed. The Agent had been appointed, and the court expressly retained jurisdiction in the final judgments "for all purposes." Not even a reasonably astute reader of the court's docket at that point would easily have learned that the court's stay order against creditors of Great White, which was entered a year earlier, was to be maintained. Second, the only testimony that supports a finding that Augustine "knew" of the stay order is that of the Agent, who informed Augustine's accountant sometime during the summer of 2001 that there were "usually" stay orders entered in these cases. The district court, ruling precisely on this testimony in November 2001, concluded only that Augustine was on inquiry notice of the pendency of the stay. That was as far as the judge would go at that time.

Further, in an agreed order entered in August, 2002, the court expressly superseded

8

his findings in his November 16, 2001, order. The agreed order specified that the findings of fact, conclusions of law, and the "so-ordered" provisions of the November 16, 2001, order "are hereby superseded and the terms of the instant agreed order shall control the relationship . . . ." Thus, even the court's weak "inquiry notice" finding against Augustine was abandoned.

With regard to the bankruptcy case, Augustine points out that once it received actual notice of the stay order, it promptly informed the bankruptcy court, and it did not object to transferring the case to Waco. The Agent did not appear in Chicago to contest the entry of an order for relief. The bankruptcy went on in Waco for about a year until the district court, sitting as the bankruptcy court, concluded that he should abstain. During this time, however, all the parties treated the bankruptcy as a viable proceeding in which various aspects of the parties' disputes could be resolved.[2]

In the court's written opinion on the motion to abstain from continuing the bankruptcy case, the court does not actually accuse Augustine of impropriety. Instead, he states, Augustine instigated the bankruptcy late in time to make a claim that creditors' interests must totally prevail over those of defrauded shareholders. Later in that opinion, the court expressly recognizes that the determination of relative priority among creditors and shareholders remains to be decided as a legal matter.

Based on these rulings, I believe the district court flatly contradicted himself in his

---

[2]On the docket sheet, the Court's Record entries 273 (3/4/02) and 291 (4/8/02) specifically reference the productive, helpful status conferences on the bankruptcy and "all the helpful and persuasive comments and suggestions made by [inter alia] counsel for Augustine . . . ." Docket #291 indicates the difficult issues raised by the bankruptcy and its "unique" nature and "the importance of this case to Great White's creditors . . . ." The court "continues to appreciate the parties' assistance and cooperation . . . ."

later ruling that Augustine "knowingly" and "willfully" violated the stay order. He had initially been unwilling to make that direct finding, and the order mentioning Augustine's inquiry notice was expressly superseded in all regards in the agreed order less than a year later. It is further inconsistent for the court to state that Augustine cost the estate a hundred thousand dollars in regard to the pending bankruptcy, because the parties knew they had to litigate their disputes somewhere. One may disapprove of Augustine's all-or-nothing litigation approach, but as even the court acknowledged, serious issues existed, and have never been decided, concerning the proper disbursement of the disgorgement assets among shareholders and creditors.

Because the court's findings that allegedly justify equitable subordination of Augustine's claim are not supported in the record, I would hold them clearly erroneous and would vacate the judgment and remand for reconsideration.

This does not mean that Augustine would succeed in its contention that, as a creditor of Great White, its claim is entitled to full priority over the shareholders' securities fraud claims. The general rule, as the majority opinion notes, affords both latitude and deference to a receiver appointed at the SEC's behest. It is an interesting and apparently novel question whether such a receivership can, in the exercise of "equitable" powers, wholly ignore the state law of priorities in the winding-up of a corporation. Cf. FDIC v. Meyer, 510 U.S. 471, 486, 114 S. Ct. 996, 1006 (1994)(refusing to create direct action for damages not found in federal law).[3] Perhaps this ultimate issue would not have been reached in this case, as the disgorgement estate, made up largely of assets obtained from Smith, the chief promoter of the scheme, might be viewed in part as

_____

[3]I agree with the majority that bankruptcy law priorities have no further applicability here following abstention.

restoring losses to people whom Smith had personally defrauded.  Nevertheless, Augustine, like other creditors of Great White whose claims the Agent settled, ought to have received a place at the table.

I respectfully dissent.